Martha June **KERBER** et al.,
Plaintiffs,

v.

Stephan J. **KAKOS** et al., Defendants.

No. 72 C 1449.

United States District Court,
N. D. Illinois, E. D.

June 19, 1974.

George B. Collins, Alan O. Amos, Jeffrey A. Schulman, Chicago, Ill., for plaintiffs.

John J. Enright, Donald Dreyfus, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiffs, purchasers of Lynn Products, Inc. (Lynn) securities, bring this action to remedy alleged violations of Section 12(g) and 10 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78*l*(g), 78j, and Rule 10b–5 of the Securities and Exchange Commission, 17 C. F.R. 240.10b–5. Jurisdiction is predicated on Section 27 of the Act, 15 U.S.C. § 78aa, and Section 1331 of the Judicial Code, 28 U.S.C. § 1331. In an unpublished memorandum order, dated March 5, 1974, I struck plaintiffs' Section 10 and Rule 10b–5 allegations for failure to make the appropriate jurisdictional averments. The cause is now before me on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

Plaintiffs' complaint is simple. Kerber alleges that plaintiffs purchased Lynn stock, that pursuant to Section 12(g) Lynn should have filed with the SEC a registration statement disclosing its financial condition, but failed to do so, and that this failure to register the securities proximately caused plaintiffs' injury in that they would not have purchased the stock had they known Lynn's true financial condition. Joined as party defendants with Lynn are various officers and directors of the corporation.

Defendants move to dismiss for failure to state a claim arguing, in essence, that Section 12(g) does not support an implied private right of action. The argument proceeds along two distinct lines: (1) the language employed in Section 12(g), by implication, negatives any implied civil action, and (2) the remedy expressly supplied by Section 18(a), 15 U.S.C. § 78r(a), is the exclusive remedy for Section 12 violations. These contentions will be discussed in the order stated.

First, defendants assert that Section 12(g) renders only non-registration

unlawful.[1] Unlike Section 12(a), for example, which expressly makes it unlawful for members, brokers, or dealers to effect any transaction in any security on a national securities exchange unless a registration is in effect as to that security, Section 12(g) only requires registering certain over-the-counter securities and does not proscribe the sale of unregistered securities. The sale did not contravene any provision of the 1934 Act and hence there is no liability to purchasers of the stock. The obligations created by Section 12(g) are filing obligations directed primarily to the SEC and enforcible only by the SEC.

■ The argument turns on semantics, fails to perceive the consequences of the alleged violation, and in a sense ignores the role of proximate cause in securities litigation. Plaintiffs allege that defendants violated Section 12(g) and that the violation of this legislative enactment proximately caused their injury. In Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D.Pa.1946), the court observed:

> The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if; (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect. . . . This

rule is more than merely a canon of statutory interpretation. The disregard of the command of a statute is a wrongful act and a tort.

The cause of action is implied by the common law and not from the language of the statute. The phraseology and proscription of the enactment are important only as they relate to the status of the injured party vis-a-vis the violated enactment. So long as plaintiffs are members of the class for whose protection the statutory duty was created, a failure to register may give rise to a cause of action to the same degree as would the violation of a statute which prohibited sale of unregistered securities. Of course, the legislature may withhold from injured parties the right to recover damages arising from the violation of a statute, but the right is so fundamental and deeply ingrained in the law that where it is not expressly denied, the intention to withhold it should appear very clearly and plainly. Kardon v. National Gypsum Co., *supra*, at 514. Contrary to defendants' position, the language of Section 12 alone does not manifest a clear congressional intent to preclude a private civil action under Section 12(g). My inquiry then turns to the intent of the enactment as evidenced by legislative history.

Congress enacted the Securities Exchange Act of 1934 to provide a mode of federal regulation over the methods, functions, and practices of the financial

---

1. As relevant to this controversy Section 12(g) provides:

> (g)(1) Every issuer which is engaged in interstate commerce, or in a business affecting interstate commerce, or whose securities are traded by use of the mails or any means or instrumentality of interstate commerce shall—
>
> * * * * *
>
> (B) Within one hundred and twenty days after the last day of its first fiscal year ended after two years from July 1, 1964, on which the issuer has total assets exceeding $1,000,000 and a class of equity security (other than an exempted security) held of record by five hundred or more but less than seven hundred and fifty persons,

register such security by filing with the Commission a registration statement (and such copies thereof as the Commission may require) with respect to such security containing such information and documents as the Commission may specify comparable to that which is required in an application to register a security pursuant to subsection (b) of this section. Each such registration statement shall become effective sixty days after filing with the Commission or within such shorter period as the Commission may direct. Until such registration statement becomes effective it shall not be deemed filed for the purpose of section 78r of this title. . . .

markets so as to restore public confidence in them by fostering the ideal of an open and free marketplace. Ostensibly, the Act is premised on the theme of establishing protection for the general investing public. Section 2, 15 U.S.C. § 78b, opens by recognizing that transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest. Section 12(b), which also measures the breadth of disclosure under Section 12(g), echoes this concern in providing that applications for registration shall contain such information "as the Commission may by rules and regulations require, as necessary or appropriate in the public interest or for the protection of investors." Sections 10(b) and 14(a), 15 U.S.C. §§ 78j(b), 78n(a), as well as more than thirty other sections of the Act similarly refer expressly to this overriding need.[2]

■ Consistent with this obligation to the public, the disclosure provisions of the Act are intended to function so as (1) to prevent fraudulent transactions by turning on the "white light of publicity;" and (2) to afford investors an opportunity for a fair appraisal of the worth of a security by requiring issuers to reveal all material facts about it. The importance of the disclosure requirements of the Act is emphasized by H.R.Rep. No. 1383, 73d Cong., 2d Sess. (1934), at 78 Cong.Rec. 7704–05:

> No investor, no speculator, can safely buy and sell securities upon the exchanges without having an intelligent basis for forming his judgment as to the value of the securities he buys or sells. The idea of a free and open public market is built upon the theory that competing judgments of buyers and sellers as to the fair price of a security brings about a situation where the market price reflects as nearly as possible a just price. Just as artificial manipulation tends to upset the true function of an open market, so the hiding and secreting of important information obstruct the operation of the markets as indices of real value. There cannot be honest markets without honest publicity. Manipulation and dishonest practices of the marketplace thrive upon mystery and secrecy. The disclosure of information materially important to investors may not instantaneously be reflected in market value, but despite the intricacies of security values, truth does find relatively quick acceptance on the market. That is why in many cases it is so carefully guarded.

See also 78 Cong.Rec. 8163 (1934) (remarks of Senator Fletcher).

■■ The report stresses the importance of disclosure to the investor and manifests the intent to place the reporting requirements on a parity of importance with the anti-manipulation provisions. Corporate reporting is an essential cog in the proper functioning of the markets. Reporting requirements, as in Section 12(b), do not exist merely for

---

2. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe *as necessary or appropriate in the public interest or for the protection of investors* (emphasis added).

Similarly, Section 14(a) provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe *as necessary or appropriate in the public interest or for the protection of investors,* to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title (emphasis added).

the administrative convenience of the SEC. They serve a very real protective function. They, like the anti-manipulation provisions, are aimed at protecting against direct private injury. This desire continues into Section 12(g), though it was not enacted until 1964. H.R.Rep. No. 1418, 88th Cong., 2d Sess. (1964) at 2 U.S.Code Cong. & Admin. News, 3013 (1964), indicates that Section 12(g) is designed to put over-the-counter securities in which there is a substantial public interest on the same regulatory level as listed securities so far as the disclosure-oriented provisions of the Act are concerned; it is intended "to extend to investors in certain over-the-counter securities the same protection now afforded to those in listed securities."

■ Pursuant to the Congressional belief that disclosure is essential to complete and effective investor protection, the Securities Exchange Act of 1934 establishes procedures by which the investing public can obtain the information needed to make intelligent investment decisions. Section 12 is the cornerstone in this system. In registering its securities the issuer must disclose all information which may affect the investment decision. This information then is kept current by annual and periodic filings under Section 13. Section 13 reports, however, need be submitted only if a security has been registered pursuant to Section 12. Similarly, the proxy protections of Section 14 and the insider disclosures of Section 16 also are keyed expressly to a Section 12 registration. A threshold violation of Section 12 may well strip an investor of many of the protections Congress intended that he have. It would be anomalous to echo the protections afforded an investor by the Act's reporting requirements and then hold that an investor has no remedy when he has been injured by the abridgement of those protections. The essential objective of securities legislation is investor protection. This implies the availability of judicial relief where

necessary to achieve that result. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Any holding by this court which permits the circumvention of basic protections of the Act would "leave such legislation little more than a snare and delusion." Charles Hughes & Co. v. Securities and Exchange Commission, 139 F.2d 434, 437–438 (2d Cir. 1943). If Section 12(g) here were construed as not granting a right of action to plaintiffs, the avowed purpose of disclosure would be no more than a snare and a delusion. Cf. Baird v. Franklin, 141 F.2d 238, 244 (2d Cir. 1944) (Clark, J., dissent).

■ I perceive no reason to treat a violation of Section 12(g) any differently from, for example, a violation of Section 10 or Section 14 of the Act. Certainly, the protection it affords an investor is no less important than the protections of the anti-fraud provisions. See H.R.Rep. No. 1383, *supra*. The Act strives to make control of securities transactions "reasonably complete and effective." 15 U.S.C. 78b. If this goal is to be obtained, if the investing public is to be completely and effectively protected, Section 12(g) must be construed as granting to injured investors individual causes of action to enforce the statutory disclosure duties imposed on issuers. Cf. Kaminsky v. Abrams, 281 F. Supp. 501 (S.D.N.Y.1968); Chicago South Shore & South Bend Railroad v. Monon, 1964–66 CCH Fed.Sec.L.Rep. ¶91,525 (N.D.Ill.1965); Kroese v. Crawford, 1961–64 CCH Fed.L.Rep. ¶91,262 (S.D.N.Y.1963). But see Smith v. Murchison, 310 F.Supp. 1079 (S.D.N.Y. 1970); Robbins v. Banner Industries, Inc., 285 F.Supp. 758 (S.D.N.Y.1966). Indeed, some authorities suggest that a violation of any section of the Securities Exchange Act of 1934 gives rise to a private right of action. Rogers v. Crown Stove Works, 236 F.Supp. 572 (N.D.Ill.1964); Hawkins v. Merrill Lynch, Pierce, Fenner & Beane, 85 F. Supp. 104 (W.D.Ark.1949). Irrespective of whether that is the law, I am mindful

of the Supreme Court's dictate in J. I. Case Co. v. Borak, *supra*, 377 U.S. at 433, 84 S.Ct. at 1560, that I be "alert to provide such remedies as are necessary to make effective the congressional purpose [of the Securities Exchange Act of 1934]." A private right of action under Section 12(g) is such a remedy. It is not at all uncommon for federal courts to fashion a federal remedy or claim for relief where federal rights are concerned. Textile Workers v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957).

■ Defendants' second argument focuses on the relationship of Section 18(a), 15 U.S.C. § 78r(a),[3] to Section 12(g). It is asserted that Section 18(a) is the exclusive remedy for Section 12(g) violations. The argument is one of statutory construction: when an enactment expressly provides a particular remedy or remedies, courts should not, by implication, expand the coverage of the statute to include other remedies. See, *e. g.*, Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." Botany Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929). The principle reflects the ancient maxim "expressio unius est exclusio alterius." Since the Act endows the SEC with means to enforce its provisions and also creates a private cause of action under very limited circumstances, it may be argued that the maxim compels the conclusion that the remedy created in Section 18(a) is the exclusive avenue for private redress of Section 12(g) violations. Cf. National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (U.S.1974); duPont v. Wyly, 61 F.R.D. 615 (D.Del. 1973); In re Penn Central Securities Litigation, 347 F.Supp. 1327 (E.D.Pa. 1972), modified, 357 F.Supp. 869 (E.D. Pa.1973), aff'd, 494 F.2d 528 (3d Cir. 1974); Kardon v. National Gypsum Co., *supra*.

■ I believe the argument is untenable as it relates to failure to register violations of Section 12(g). Even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent. National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers, *supra*; Neuberger v. Comm'r, 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940). In the debates on the passage of the Act, Senator Steiwer clearly recognized that violations of Section 12 may give rise to civil liabilities not expressly sanctioned in the Act. 78 Cong.Rec. 8586 (1934) (remarks of Senator Steiwer). Those assertions went uncontested. Additionally, Section 28(a), 15 U.S.C. § 78bb(a), directly states that "the rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity." The inference of a private cause of action, even in the face of Section 18(a), is consistent with the evident legislative intent and with the effectuation

3. Section 18(a) provides:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

of the purposes intended to be served by the Act. The specific liability sections of the Exchange Act "do not cover all the variegated activities with which [the] Act is concerned." III L. Loss, Securities Regulation 1785 (2d ed. 1961).

I also reach the same result when a technical statutory construction formula is employed. Inartfully stated, Section 12(g) says: thou shalt register. Ostensibly, then, a failure to register is a violation of Section 12(g). However, the mandate to issuers to file also indicates by implication: thou shalt file true and accurate statements. Hence, also by implication, the filing of a misleading registration statement is a violation of Section 12(g). Am I to conclude that the creation of an express civil remedy for the latter violation indicates an intent to preclude the former? I think not. The violations and their attendant remedies are separate and distinct. Under the *Kardon* formulation, the doing of either act evokes common law tort liability and thus gives rise to an implied private cause of action. The common law causes of action exist independently of each other and so would the implied causes of action under Section 12(g). True as it is that Section 18(a) is the exclusive Exchange Act remedy for filing misleading statements, see duPont v. Wyly, *supra*; In re Penn Central Securities Litigation, *supra*, the existence of that express remedy, in my view, does not preclude me from implying a cause of action from Section 12(g) when the issuer completely ignores the registration requirements.[4]

Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied.

---

4. While defendants have not argued the point, I do not believe that the existence of an express civil action under the Securities Act of 1933, 15 U.S.C. § 77*l*(1), for sales of unregistered securities, indicates a Congressional intent to withhold an individual right to sue under Section 12(g) of the Securities Exchange Act of 1934. But see 3 Sutherland, Statutory Construction, § 6104, at 161–62 (3d ed. 1943) ; Comment, Civil Liability for Misstatements in Documents Filed Under Securities Act and Securities Exchange Act. 44 Yale L.J. 456, 476–77 (Legislative history cited therein).

Nor does Section 15(c)(4) of the Exchange Act, 15 U.S.C. § 78*o*(c)(4), which prescribes SEC procedures when there has been no Section 12 filing, indicate that I should not imply a cause of action under Section 12(g) in favor of investors injured by its violation.