**Harold CRAMER, custodian for Patricia Gail Cramer**

v.

**GENERAL TELEPHONE & ELECTRONICS et al.**

Civ. A. No. 76–1231.

United States District Court, E. D. Pennsylvania.

Aug. 22, 1977.

Mitchell A. Kramer, Kramer & Salus, Philadelphia, Pa., for plaintiff.

Arthur H. Kahn, Philadelphia, Pa., of counsel, for Warner, et al.

Oliver C. Biddle, New York City, for Arthur Andersen & Co.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Brophy, Douglas and Warner.

Dean C. Rohrer, New York City, for General Telephone and Electronics, John Haikins, Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel.

Morrison, Paul, Stillman & Beiley, New York City, for Wm. F. Bennett.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

This shareholder derivative action, alleging violations of Sections 10(b), 12(b)(1),

13(a) and 14(a) of the 1934 Securities and Exchange Acts as well as breach of fiduciary duties, was commenced by Harold Cramer on behalf of the shareholders of General Telephone & Electronics Corp. (GTE) against Leslie H. Warner, Theodore F. Brophy, John G. Douglas and William Bennett, corporate officers[1], and Arthur Andersen & Co., GTE's auditors. Jurisdiction is founded under § 27 of the 1934 Act, as amended, 15 U.S.C. § 78aa, 28 U.S.C. § 1332, and pendent jurisdiction.

Presently before the court are the following motions: plaintiff's motion for a Protective Order under Rule 26(c) of the Federal Rules of Civil Procedure; defendants' joint motion to dismiss the complaint for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6); and, as an alternative, defendants' motion for summary judgment on grounds that the complaint is barred by principles of res judicata and collateral estoppel.[2]

For the reasons stated herein, the motion for summary judgment is granted as to Sections 13(a), and 14(a) and the pendent state claims. The claims under Sections 10(b) and Rule 10b–5 and Section 12(a) are dismissed. Finally, plaintiff's motion for protective order is denied.

## FACTUAL BACKGROUND

In view of the diversity and complexity of the claims asserted and the number of legal actions filed pursuant thereto, a review of the factual and legal history of this case is necessary.

Cramer, plaintiff herein, has alleged that the defendants "participated, and/or acquiesced in, and /or aided and abetted and/or failed to discover when in the exercise of due diligence they would have discovered devices, schemes and artifices to defraud . . . GTE." [Complaint, page 4 ¶ 14]. It is further alleged that: GTE's assets were unlawfully used; that corporate financial records and corporate tax returns were falsified; and that material facts were incompletely and/or inaccurately disclosed to GTE's shareholders. Plaintiff has maintained that GTE's 1976 Annual Report contains all the facts relevant to the claims he has asserted; he has incorporated that report into his complaint.

In November, 1975, GTE's Board of Directors authorized the formation of an Audit Committee composed solely of outside, non-management directors, to conduct an investigation to determine whether between January 1, 1971 and December 31, 1975, GTE or any of its international subsidiaries had made " . . . illegal political contributions, unlawful payments to domestic or foreign government officials or other payments which were otherwise improper or improperly recorded. . . ." [Complaint, Exhibit A, page 13]. The Washington, D.C. law firm of Wilmer, Cutler and Pickering (which had not previously represented GTE) and the accounting firm of Arthur Andersen & Co. were retained to assist this Committee.

The fifty-one page Audit Committee report, dated March 4, 1976, revealed that approximately $8,000,000 was illegally paid to or for the benefit of government officials as commercial kickbacks, rebates or bribes to officials of private foreign customers.[3] An additional sum, approximately $2,000,-000, was paid pursuant to a pre-January 1,

---

1. The individual defendants held the following positions with GTE:
   Leslie H. Warner, Chairman of the Board of GTE, Theodore F. Brophy, President and Member of the Board of GTE; John J. Douglas, Executive Vice-President of Finance and Director of GTE; William F. Bennett, Executive Vice President of the Manufacturing Group and Director of GTE.

2. Defendant Arthur Andersen & Co. and nominal defendant GTE have joined the motion of defendants Warner, Brophy, Douglas and Bennett to dismiss the complaint and for summary

judgment. See Documents Number 35 (filed June 9, 1977) and Number 36 (filed June 10, 1977).

3. The Committee concluded that $2,219,639.00 was paid directly to or for the benefit of government officials. It was further concluded that $5,086,028.00, representing portions of payments, were paid as commercial kickbacks, rebates or bribes. Said payments were made to officials of foreign customers. See Plaintiff's Complaint, Exhibit A at p. 27.

1971 commission arrangement made between GTE officials and officers of a single foreign company, designated simply "The Customer" in the Audit Committee Report; GTE held a "substantial interest" in the company.[4]

This entire audit report was included in the 1976 Proxy Statement and distributed to all GTE shareholders before the Annual shareholder meeting was held on April 21, 1976. Both the report, and the Supplemental Report dated November 4, 1976, were filed with the SEC.

On March 16, 1976, Mr. Auerbach, a GTE shareholder, filed a derivative action against the corporate officials and Arthur Andersen in the Supreme Court of New York in Westchester County. He alleged that the illegal payments constituted a waste of GTE's assets, and that by permitting such payments, defendants breached their fiduciary duty to the corporation. *Auerbach v. Bennett,* Civil Action No. 572/77, Sup.Ct. of N.Y., Westchester Cty., April 29, 1977, p. 3.

Two weeks after the filing of the *Auerbach* suit, Mr. Limmer filed a derivative suit in the United States District Court for the Southern District of New York, charging that corporate officials had violated Sections 13(a) and 14(a) of the 1934 Securities and Exchange Act and had breached their fiduciary duty to shareholders. Warner, Brophy, Douglas and Bennett were named as defendants; Arthur Andersen & Co. was not made party to that suit. *Limmer v. GTE,* No. 76 Civ. 1494 (S.D.N.Y., March 11, 1977). Finally, on June 18, 1976, plaintiff herein commenced the instant litigation in this Court.

In order to assess GTE's position with respect to these actions, GTE's Board of Directors, acting pursuant to § 712 of the Business Corporation Law of New York and § 20 of the Corporate By-Laws, formed a Special Litigation Committee. The Committee was composed of three independent directors who had had no prior connection with GTE; Chief Judge Charles S. Desmond, now retired from the New York Court of Appeals acting as Special Counsel to the Committee. [Defendants' Motion for Summary Judgment, p. 5].

The Committee concluded that the defendants had satisfied their responsibilities under state law and that the three derivative actions were without merit. Moreover, the Committee determined that even if a cause of action could be said to exist, it would not be in GTE's best interests for any of the suits to be pursued by either GTE or the three named litigants. [Defendants' Motion for Summary Judgment, p. 5].

Based on the conclusions of GTE's Special Litigation Committee that the defendants had acted in good faith, that they had satisfied their fiduciary responsibilities, that the claims asserted in each derivative action were without merit, and that prosecution of these claims were not in the best interests of the corporation, GTE moved to dismiss the complaint in each suit. While motions to dismiss were pending in this suit, the complaints in *Auerbach v. Bennett* and *Limmer v. GTE,* were dismissed.

It is defendants' contention that *Auerbach v. Bennett* and *Limmer v. GTE* preclude this court's consideration of the instant case under doctrines of res judicata

---

**4.** As the Audit Committee Report indicates: "It [the Commission arrangement] arose out of the sale by GTE of its substantial ownership interest in the Customer, at the *urging of a foreign government,* to a group of foreign nationals (the "Group") in good standing with the government. Since the Group did not have sufficient financial resources to purchase GTE's interest, it was agreed that GTE would finance a part of the purchase price by paying the Group a commission on sales of equipment by GTE to the Customer. The *Group informed GTE that one of GTE's equipment competitors* had offered to enter into such an arrangement if GTE was not willing to do so. GTE ultimately agreed to pay sales commissions to a company designated by the Group and located in a third country. GTE subsequently sold its controlling interest in an investment company controlled by the Group; the stock of the customer is listed and traded on two stock exchanges in the United States and, according to the Audit Committee report, the commission agreement is no longer honored by GTE. Emphasis added. Complaint, Exhibit A, pp. 21–22.

and collateral estoppel. Plaintiff, on the other hand, argues that such a contention is both unfounded under applicable law and inconsistent with defendants' earlier position, stated in court on September 9, 1976, that the consolidation of *Limmer* and the instant case under 28 U.S.C. § 1407 would be inappropriate at that time.[5]

This Court will first determine whether plaintiff's federal claims are barred by the res judicata or collateral estoppel effect of the *Auerbach* and *Limmer* judgments. Because it appears that there are no viable federal claims, the pendent state law claims will not be reached by this court as the exercise of jurisdiction over pendent state law claims by a federal district court is discretionary. *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Aldens, Ind. v. Packel,* 524 F.2d 38 (3d Cir. 1975), *cert. denied* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Robinson v. Penn Central Co.,* 484 F.2d 553 (3d Cir. 1973). Cf. *Hagans v. Lavine,* 415 U.S. 528, 549–550, 94 S.Ct. 1372, 1384–1385, 39 L.Ed.2d 577 (1974).

## RES JUDICATA: CLAIMS UNDER §§ 13 AND 14A

The doctrine of res judicata bars repetitious litigation. As the Court of Appeals for this Circuit reasoned in *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519 (3d Cir. 1973):

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim on demand, but as to any other admissible matter which might have been offered

for that purpose. [484 F.2d 524, citing *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).]

As there can be no valid dispute that the *Limmer* judgment was a final adjudication on the merits of the issues presented, the threshold question for this Court is whether *Limmer* and *Cramer* involve the same parties and allege the same cause of action.

■ I find that the *Limmer* suit and the present litigation involve the same parties. In both cases plaintiffs have sued derivatively in behalf of the corporation; the claim pressed by each shareholder against directors and third parties was not his own, but the corporation's. The United States Supreme Court ruled in *Ross v. Bernard,* 396 U.S. 531, 538–539, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) that:

> The corporation is a necessary party to the action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, *the stockholder being at best the nominal plaintiff.* [Emphasis added]

Thus, as plaintiffs in both *Cramer* and *Limmer* seek relief on behalf of GTE, the real party in interest, these actions involve the same plaintiff.

Although defendant Arthur Andersen was not named as a defendant in the *Limmer* case, in this case Arthur Andersen claims that like the other defendants, it is entitled to summary judgment by virtue of the res judicata effect of the *Limmer* decision. [Document # 36] Since plaintiff has not opposed the res judicata claim on the grounds that Arthur Andersen was not a party in the *Limmer* case [Document # 37], defendants herein will be considered as

---

5. In response to an inquiry made by the Court during oral argument held on September 9, 1976, Steven J. Glassman, Esquire, council for defendants Warner, Brophy and Douglas, indicated that consolidation of the two federal cases was inappropriate *at that time* because all defendants were not involved in both cases. Transcript, September 9, 1976, pp. 18–20. Plaintiff also cites a letter sent to the Court by Joseph A. Tate, Esquire, local council for the corporate defendants wherein Mr. Tate states that at the time in question, the presence of diverse parties in the litigation as well as the pendency of different jurisdictional challenges to the complaints suggested that, at least to the defendants, " . . . any such consolidation would be premature and inappropriate at this time." Letter to the court from Joseph A. Tate, Esq. September 10, 1976, last paragraph.

The inference of counsel's comment was that the defendants would also oppose a transfer under 28 U.S.C. § 1404(a).

identical to those in *Limmer* for the limited purposes of considering the res judicata issues. Plaintiff is not prejudiced by this ruling because even if plaintiff had opposed Arthur Andersen's joinder in the Motion for Summary Judgment, the § 10b claim asserted against the accountants must be dismissed because plaintiff has failed to allege scienter.. [See discussion on § 10b, *supra*]

The operative facts in *Cramer* and *Limmer* are also identical. The complaints in both cases arise out of the same transactions reported by the Audit Committee Report.

Yet, although arising out of the same operative facts, only two of the federal claims are asserted in both complaints, namely that defendants violated §§ 13 and 14(a), and Rule 14a–9, of the 1934 Securities Act by failing to make full and complete disclosure of the illegal payments in proxy materials distributed to GTE shareholders between 1970 and 1975.

In *Limmer*, Judge Conner specifically held that even assuming plaintiff's factual allegations to be true, plaintiff had failed to state any claim upon which relief might be granted:

> Section 14(a), after all, contemplates the prevention, or redress of such injury as would be, or is, directly traceable to a transaction authorized by a corporation in the partial light of a misleading proxy solicitation. . . . In the present case, by contrast, the damages claimed, . . . flow from a breach of a fiduciary obligation owed as a director or officer, rather than from any shareholder vote obtained by false proxy solicitation materials. [citations omitted, *Limmer v. GTE, supra*, p. 4].

Thus, the *Limmer* court dismissed the § 14(a) claim.

The claim asserted under § 13 was voluntarily withdrawn by the plaintiff in *Limmer* and dismissed with prejudice pursuant to stipulation. *Limmer, supra*, page a, fn. 1. [Defendant's Motion for Summary Judgment, June 7, 1977, page 23.] Thus, res judicata bars Cramer's claims under both §§ 13 and 14(a).

■ Defendants herein forcefully argue that the doctrine of res judicata also precludes plaintiff's claims under § 10(b), (and Rule 10b–5) and § 12(b)(1), even though the plaintiff in *Limmer* did not assert a claim under those sections of the 1934 act. Defendants maintain that · ". . . the central element of a claim under each of these sections of the 1934 Act is that the defendant misled the plaintiff by making false statements of material fact or omitting to state material facts necessary to make the statement made not false or misleading." [Defendants' Motion for Summary Judgment, p. 23]. Thus, they urge that when ruling on the § 14(a) claim, the court was holding in effect that there were no meritorious claims under §§ 10(b) and 12(b)(1).

While it is true that the overriding purpose of the 1934 Securities Act was to protect investors against manipulation of stock prices by regulation of securities transactions [S.Rep.No.792, 73d Cong., 2d Sess., 1–5 (1934)], it is not true, as defendants would have this court hold, that § 10(b) and § 14(a) are identical causes of actions. Section 10(b) makes it:

> unlawful for any person . . . (b) [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j.

Section 14(a), on the other hand, speaks not to the purchase or sale of a security, but to the solicitation of proxies. This section provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest . . , to solicit or to permit the use of his name to solicit any proxy or consent or autho-

rization in respect of any security . . registered pursuant to section 781 of this title. 15 U.S.C. § 78n(a).

Because the elements necessary to make out a § 10(b) claim differ from those necessary to establish a § 14(a) violation, a finding that defendants did not violate § 14(a) should not preclude the other claim. In order to successfully maintain a cause of action under § 14(a), a plaintiff must allege that specific proxy statements were materially false and misleading, that there was a causal connection between the alleged violation of the proxy rules, and the injury suffered by the plaintiff. *T.S.C. Industries, Inc. v. Northway*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *J. I. Case v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). This was the standard applied by the *Limmer* court, which found that the plaintiff had not met these requirements.

A successful § 10(b) derivative action requires plaintiff to show the following: that the corporation was a purchaser or seller of securities, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); that the alleged fraud or manipulative device was employed in connection with the purchase or sale of the security, *Superintendent of Insurance v. Bankers Life and Casualty*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976); and that the defendants herein had intended to deceive, manipulate or defraud the corporation, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976).

A finding that defendants did not distribute a materially misleading proxy statement is not *a fortiori* a finding that as a purchaser or seller of securities, GTE was intentionally defrauded by the defendants through use of a manipulative device employed in connection with the purchase or sale of the security.

Defendants argue that the instant case is on all fours with, and controlled by, the Third Circuit's decision in *Williamson v. Columbia Gas and Electric Corp.*, 186 F.2d 464 (3d Cir. 1950), reaffirmed by that Court in 1968 in *Clemens v. Central Railroad Company of New Jersey*, 399 F.2d 825 (3d Cir. 1968). The Court, *per* Justice Goodrich, reasoned that one claim against the defendant under Sections 1 and 2 of the Sherman Act and a second claim under Section 7 of the Clayton Act involved identical causes of action for purposes of res judicata:

> . . . the fact that different statutes are relied on does not render the claims different "causes of action" for purposes of res judicata. 186 F.2d 468.

However, a comparison of the *Williamson* case with *Cramer* and *Limmer* reveal that these factual situations are not truly analogous. The court in *Williamson* found that "[w]hether Columbia is sought to be held as sole tortfeasor or sued singly as one of several tortfeasors, assuming the injury is the same, does not matter." 186 F.2d at 468. Yet, in the instant case, the injury and damage to GTE alleged under § 10(b) of the 1934 Securities Act is *not* the same as that which must be shown under § 14(a).

Because of the complexity of the record and the requirement that plaintiff allege scienter, defined by the Supreme Court in *Ernst & Ernst v. Hochfelder, supra*, as " . . . a mental state embracing intent to deceive, manipulate or defraud." [425 U.S. 185, 194, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668], this court is reluctant to accord res judicata effect to the *Limmer* decision on § 14(a) to bar the § 10(b) claim. This court is guided by the United States Supreme Court decision in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) that a judgment, "unaccompanied by findings . . . [does] not bind the parties on any issue . . . which might arise in connection with another cause of action." The Court further ruled "[t]hat both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such court of conduct . . . may frequently give rise to more than a single cause of action." Defendants also argue that *Limmer* bars the § 12(b)(1) claim. That assertion is also incorrect.

In conclusion, the decision of the *Limmer* court does not preclude either the § 10(b) or the § 12(b)(1) claim in the instant case.

## ALTERNATIVE GROUNDS FOR DISMISSAL OF THE § 10B CLAIM

Defendants have made a motion in the alternative, seeking a dismissal of the § 10(b) claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

■ Plaintiff has standing to assert § 10(b) and Rule 10b–5 claims in behalf of GTE against the defendants. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court limited standing under § 10(b) and Rule 10b–5 to one who is a purchaser or seller of securities; in cases where plaintiff sues derivatively the corporation must be a purchaser or seller of securities. *Blue Chip Stamps*, 421 U.S. at 738, 95 S.Ct. at 1926, citing to *Schoenbaum v. Firstbrook*, 405 F.2d 215, 219 (2d Cir. 1968), *cert. denied* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Pappas v. Moss*, 393 F.2d 865, 870 (3d Cir. 1968). For § 10(b) and Rule 10b–5 purposes, the issuance by a corporation of its own shares constitutes a sale of securities. *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *In re Penn Central Securities*, 347 F.Supp. 1327, 1333 (E.D.Pa.1972).

The complaint recites several instances in which GTE either bought or sold securities. In one transaction, GTE sold its substantial ownership interest in one subsidiary company to a group of foreign nationals under a commission arrangement wherein GTE allegedly did not ultimately receive full value. [Complaint, Exhibit A, pp. 21–22]. Three other transactions are contained in GTE's 1975 Annual Report: in 1974 GTE offered 6,000,000 shares for public sale and issued 504,935 shares for exchange purposes; GTE purchased 4775 of its own shares in 1974.

■ Cramer's § 10(b) and Rule 10b–5 claims against the defendants fail when the court asks whether the manipulative devices, the alleged fraud and the alleged breaches of fiduciary duty were "in connection with" the purchase or sale of any security and whether these activities resulted in any damage to GTE. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976), relying on *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *Thomas v. Duralite Company, Inc.*, 524 F.2d 577 (3d Cir. 1975); *Rochez Bros., Inc. v. Rhoades*, 491 F.2d 402 (3d Cir. 1974).

Even assuming that the defendants' purported manipulative devices were employed in connection with either the 1975 issuance and offering or the 1974 purchase of shares, GTE suffered no loss from these transactions; moreover, no such loss was alleged.

However, the sale of GTE's substantial interest in its subsidiary to a group of foreign nationals raises the question of whether any claim for relief has been stated against the defendants under § 10(b) and Rule 10b–5 based on GTE's commission agreement. Under this agreement, GTE financed a part of the purchase price by paying the group a commission on sales of equipment made by GTE to the customer.

The 1976 Annual Report is alleged to contain the facts which form the basis of the complaint. [Complaint, ¶ 15]. In that report, GTE's investigation of the commission arrangement is examined in great detail. That investigation revealed that GTE entered the agreement when the corporation was informed by the foreign group that one of GTE's competitors had agreed to enter such an arrangement if GTE refused to do so. The commission arrangement has since been terminated. Although the amount paid to the foreign company was considerable, the Audit Committee Report indicates that this arrangement may have saved that business for GTE.

■ Cramer's theory is that the corporation has been mismanaged and that the defendants' failure to disclose such mismanagement prior to publication of the 1976 Annual Report was at the heart of a larger scheme to defraud the corporation. Although § 10b was not intended to cover situations involving "internal corporate mis-

management," the Supreme Court recognized in *Superintendent of Insurance v. Bankers Life & Casualty Co., supra,* 404 U.S. at 12, 13, 92 S.Ct. 165, that a corporation could suffer an injury as a result of deceptive practices which touched a corporation's sale or purchase of its own securities.

Even assuming that defendants' actions could be said to be corporate mismanagement which "touched" the sale or purchase of a security, *Ernst & Ernst v. Hochfelder, supra,* limits § 10(b) and Rule 10b–5 actions to those in which a defendant exhibits ". . . a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 96 S.Ct. at 1381, fn. 12; *Straub v. Vaisman & Co., Inc.,* 540 F.2d 591, 597 (3d Cir. 1976).

The complaint herein is devoid of any allegation that either the defendant officers, the Corporation or the accountants intended to defraud GTE. In averments of fraud, the circumstances constituting fraud must be stated with particularity; "[i]n the absence of allegation of facts amounting to fraud or scienter . . . mere conclusions are insufficient . . .". *Shemtab v. Shearin, Hamill & Co.,* 448 F.2d 442, 444–445 (2d Cir. 1971). *Accord Seligson v. Plum Tree, Inc.,* 361 F.Supp. 748 (E.D.Pa. 1973).

█ While it may be that the corporation and the individual defendants were negligent because the questionable practices were not discovered earlier, no claim for relief can be maintained under § 10 and Rule 10b–5 for negligence. The § 10(b) claim is therefore dismissed.

## SECTION 12(B)(1)

█ Plaintiff has also alleged a violation of Section 12(b)(1), which specifies the information an issuer must provide in an application to register a security.[6] In order to successfully maintain an action under § 12(b)(1), a plaintiff must meet the standing requirement of § 18 which limits the ability to maintain a § 12(b)(1) claim to only those plaintiffs who purchased or sold a security in reliance upon information filed

---

**6.** Section 12(b)(1) [15 U.S.C. § 78*l*(b)(1)(A)–(L)] provides:

(b) A security may be registered on a national securities exchange by the issuer filing on application with the exchange (and filing with the Commission such duplicate originals thereof as the Commission may require), which application shall contain—

(1) Such information, in such detail, as to the issuer and any person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the issuer, and any guarantor of the security as to principal or interest or both, as the Commission may by rules and regulations require, as necessary or appropriate in the public interest or for the protection of investors, in respect of the following:

(A) the organization, financial structure, and nature of the business;

(B) the terms, position, rights, and privileges of the different classes of securities outstanding;

(C) the terms on which their securities are to be, and during the preceding three years have been, offered to the public or otherwise;

(D) the directors, officers, and underwriters, and each security holder of record holding more than 10 per centum of any class of any equity security of the issuer (other than an exempted security), their remuneration and their interests in the securities of, and their material contracts with, the issuer and any person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the issuer;

(E) remuneration to others than directors and officers exceeding $20,000 per annum;

(F) bonus and profit-sharing arrangements;

(G) management and service contracts;

(H) options existing or to be created in respect of their securities;

(I) material contracts, not made in the ordinary course of business, which are to be executed in whole or in part at or after the filing of the application or which were made not more than two years before such filing, and every material patent or contract for a material patent right shall be deemed a material contract;

(J) balance sheets for not more than the three preceding fiscal years, certified if required by the rules and regulations of the Commission by independent public accountants;

(K) profit and loss statements for not more than the three preceding fiscal years, certified if required by the rules and regulations of the Commission by independent public accountants;

(L) any further financial statements which the Commission may deem necessary or appropriate for the protection of investors.

as required by § 12 or § 13, whose purchase or sales price was affected by said information, and who had no knowledge of omissions from or misrepresentations in the report.[7] As Chief Judge Lord stated in *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1340 (E.D.Pa.1972), *petition for reconsideration denied*, 357 F.Supp. 869, 876, aff'd, 494 F.2d 528, (3d Cir. 1974):

> where Congress has specifically authorized a remedy for violation of an act, the courts should not nullify the congressional scheme by implying a right of action on behalf of those not otherwise entitled to recover.

The complaint herein contains none of the allegations required to establish standing under § 18. There is no allegation that the corporation relied on any false or misleading filings in making any sale; there is no allegation that any filing affected the price of GTE securities. Finally, there is no causal nexus made, or even attempted, between any filing and any alleged loss which GTE suffered.

■ It is suggested by plaintiff that *Kerber v. Kakos*, 383 F.Supp. 625, 631 (N.D.Ill. 1974), supports the position that a private cause of action will lie even when the § 18 requirements have not been completely satisfied. However, such reliance is misplaced; in *Kerber v. Kakos*, the court implied a cause of action under § 12(b) *only* in a case where the issuer had completely ignored the registration requirements. That situation is distinguishable from the case where the issuer is alleged to have made a false and misleading statement. 383 F.Supp. at 631. The *Cramer* case falls into the latter category.

In sum, as plaintiff has failed to meet the standing requirements of § 18(a), plaintiff's claims under 12(b)(1) must be dismissed.

## PENDENT STATE CLAIM

■ The decision of the state court in *Auerbach v. Bennett* holds that as a matter of New York state law none of the defendants breached the fiduciary duty owed to GTE. The court also ruled that pursuant to the business judgment rule, GTE's decision not to maintain any legal action was proper. *Auerbach v. Bennett* was a valid final judgment involving the same parties and the same cause of action alleged by Cramer. Therefore, the New York judgment bars the instant plaintiff's pendent state claim under the doctrine of res judicata.

And, even if res judicata did not preclude consideration of plaintiffs' state law claims, this court, pursuant to the doctrine of pendent jurisdiction, declines to consider these claims. For, as the Supreme Court held in *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966);

7. 15 U.S.C. § 78r:
(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.
(b) Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.
(c) No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued.

**526**

. . . it has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . [and . . . if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*See also Broderick v. Associated Hosp. Serv. of Philadelphia*, 536 F.2d 1 (3d Cir. 1976); *Deaktor v. Fox Grocery Co.*, 475 F.2d 1112 (3d Cir. 1973), *cert. denied* 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86.

I am not unaware that as a final alternative plaintiff asserts that he should be entitled at least to further discovery to accumulate evidence which might contradict the findings of Judge Conner in *Limmer v. GTE* or the findings of the Special Audit Committee, or the decision of the New York state court in *Auerbach v. Bennett.* On the surface, a request merely for additional discovery has a certain appeal. But upon analysis, the claim for more discovery can be made forever by any stockholder who chose not to join the first law suit and instead wanted to go it alone. Plaintiff knew of the New York law suit; the forum was not patently inconvenient; the issues were clear; it was beyond dispute that it was a derivative stockholders' suit; there is no allegation of fraud or incompetence on the part of the plaintiffs in litigating the case.

I am also not unaware of plaintiff's argument that defendants are judicially estopped from raising the res judicata argument. In response to a query from the bench, defendants indicated their resistance to a consolidation of the *Cramer* and *Limmer* cases. But, no motion was ever filed for a transfer or consolidation under 28 U.S.C. §§ 1404(a) and 1407. And, it approaches absurdity for a court to rule that defense counsel should be estopped because plaintiff's counsel relied on positions taken on issues not squarely before the court.

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

The dismissal of plaintiff's §§ 10(b) and 12(b)(1) claims, and the grant of summary judgment against plaintiff as to the §§ 13 and 14(a) and pendent state law claims requires a denial of plaintiff's motion for a protective order.

**CONCLUSION**

An analysis of the *Cramer* complaint reveals that plaintiff attempted to base federal securities law claims on acts which are arguably unwise from a business standpoint and probably, in so far as the alleged bribes are concerned, questionable from any ethical standpoint. However, our role is not to write a code of ethics for businessmen. Hopefully, they should strive for a level of morality beyond reproach. But the sad fact is that their faltering moral standards may not necessarily constitute a loss or a fraud on the corporation. Some corporations reach new economic plateaus not because of their morality but despite it.

In conclusion, therefore, defendants' motion for summary judgment is granted as to claims made pursuant to §§ 13 and 14(a) of the 1934 Securities and Exchange Act and as to the pendent state law claims. The §§ 10(b) and 12(b)(1) claims are dismissed. And, plaintiff's motion for a protective order is denied.