OPINION OF THE COURT
Jones, J.
The rejection on the merits of a stockholders’ derivative action brought by one shareholder on behalf of the corporation against designated directors and officers for corporate waste and breach of fiduciary duty operates as a res judicata bar to a similar action instituted by another shareholder where the first action was not collusive or fraudulent, the second shareholder was not excluded from *416 participation in the first action, and both actions arose out of the same underlying transaction or series of connected transactions.
Plaintiff, a stockholder of General Telephone & Electronics Corp. (GTE), instituted this derivative action on behalf of the corporation against individuals who were corporate officers or directors or both during the period when certain alleged waste of corporate assets and breach of fiduciary duty took place. After plaintiff served an interrogatory for document discovery but before service of an answer to the complaint, the corporation and the individual defendants Knowles and Page moved for dismissal or in the alternative for summary judgment on a variety of grounds. Special Term denied the motions with leave, to renew after discovery. The Appellate Division reversed and granted summary judgment to the moving defendants[1] dismissing the complaint on the ground that, in the absence of evidence of fraud or bad faith (of which the court found none), the business judgment rule barred inquiry into the determination by a special litigation committee, appointed by the board to inquire into certain derivative actions, that it would not be in the corporation’s interest for plaintiff’s action to proceed. The Appellate Division also rejected plaintiff’s claim that the adequacy and appropriateness of the committee’s investigative procedures and methodologies (a subject open to judicial review in the application of the business judgment rule in a situation such as that here presented) had been found to be defective in an action by another stockholder (Cramer v General Tel. & Electronics Corp., 582 F2d 259) and impliedly determined that no such infirmity had been demonstrated in this case.
We conclude that plaintiff’s complaint was properly dismissed, but not on the ground that he had failed to make an adequate showing of bad faith or fraud or of infirmity in the investigative procedures of the special litigation committee. Dismissal on the latter ground was premature. The amended complaint was served on March 2, 1977; plaintiff’s interrogatory for documentary disclosure was *417 served on April 22,1977. Then on May 24,1977 defendants, before making any response to the interrogátory, served their notice of motion to dismiss under CPLR 3211 (subd [a], pars 3, 5, 7) or alternatively for summary judgment under CPLR 3212 (subd [b]) thereby forestalling further efforts at disclosure (CPLR 3214, subd [b]). As we indicated in Auerbach v Bennett (47 NY2d 619), the business judgment rule does not foreclose judicial inquiry in cases such as this into the disinterested independence and good faith of the members of the special litigation committee and the adequacy and appropriateness of that committee’s investigative procedures and methodologies. In Auerbach no affidavit had been submitted in opposition to the motion for summary judgment and no application had been made at nisi prius for postponement of the summary judgment motion pending the conduct of disclosure procedures; the application, first made on appeal, was not timely. By significant contrast, in the present case, as indicated, an application for specified documentary discovery was outstanding and unanswered when the motion for summary judgment was made; additionally that motion was explicitly opposed on the ground that disclosure procedures had not been completed. Nor can that opposition be dismissed in this case, as it might in many cases, because the essential facts anticipated to be discovered were not identified with particularity (cf. CPLR 3212, subd [f]). Inasmuch as almost all possible evidentiary data with respect to the areas of permissible inquiry were within the exclusive possession of defendants and, by reason of their nature, could be described with any degree of specificity only by resort to imaginative speculation, it would be unreasonable to hold plaintiff in cases such as this to the customary requirement that he show that facts essential to the defeat of the motion may exist although they cannot be stated.[2] “The business judgment doctrine should not be *418 interpreted to stifle legitimate scrutiny by stockholders of decisions of management which, concededly, require investigation by outside directors and present ostensible situations of conflict of interest. Nor should the report of the outside directors be immune from scrutiny by an interpretation of the doctrine which compels the acceptance of the findings of the report on their face. In particular, summary judgment which ends a derivative action at the threshold, before the plaintiff has been afforded the opportunity of pretrial discovery and examination before trial, should not be the means of foreclosing a nonfrivolous action”. (Auerbach v Bennett, 64 AD2d 98, 107-108, mod 47 NY2d 619.) In the circumstances of this case it was premature to have granted summary judgment to defendants for insufficiency of plaintiff’s evidentiary showing under the principles of Auerbach.
Plaintiff’s claims should nonetheless have been dismissed under the doctrine of res judicata.
Amplification of this conclusion must be preceded by an examination of the facts surrounding this litigation. The relevant events have been set out in detail in our opinion in Auerbach v Bennett (47 NY2d 619, supra), disposing of another action also brought by a disgruntled stockholder of GTE. Summarized briefly they are as follows: In March, 1976 an audit committee, appointed by the corporation’s board of directors to determine whether the corporation had engaged in what was being disclosed as a common practice among similar multinational companies of making questionable payments to foreign officials, reported evidence that such payments had been made in substantial sums by GTE. The committee’s report was filed with the Securities and Exchange Commission and in a proxy statement was disclosed to corporate shareholders, three of whom (Auerbach, Limmer and Cramer) promptly instituted derivative actions against the corporate directors.[3] In April, 1976 the *419 board of directors created a special litigation committee consisting of three directors, who had joined the board subsequent to the challenged payments, to determine on behalf of the corporation what position the corporation should take with respect to the pending and similar shareholder derivative actions. After an investigation of more than six months, in November, 1976 the committee reported to the board that it Had found no breach of duty by the directors named as defendants in the pending actions, that there was no merit to the claims, and that it would not be in the best interests of the corporation for the actions to proceed.[4] The corporation’s general counsel was accordingly directed by the special litigation committee to take the position in the Auerbach, Limmer and Cramer actions that that committee, acting with full authority of the board of directors, had concluded that it was not in the best interests of the corporation or its shareholders for the actions to continue to be prosecuted on GTE’s behalf; with respect to the actions pending in Federal courts counsel was instructed also to assert that the Federal claims were not meritorious and that accordingly jurisdiction over the pendent State-law claims was lacking.
Pursuant to the foregoing instructions, GTE’s attorneys moved for dismissal of the three pending derivative actions. Our court granted such relief in the Auerbach case, concluding that the plaintiff in that action (who had not sought disclosure or asserted that summary judgment should be deferred to permit disclosure procedures) had failed to make a sufficient evidentiary showing to entitle him to a trial either as to the disinterested, independence of the members of the special litigation committee or as to deficiencies in its investigative procedures (Auerbach v Bennett, 47 NY2d 619, supra). The Limmer action was dismissed for *420 failure to state a claim under Federal securities laws and consequent lack of pendent subject matter jurisdiction (Limmer v General Tel. & Electronics, 76 Civ 1494 [SDNY, March 11, 1977]). The Cramer case was dismissed in an opinion which will be discussed subsequently (Cramer v General Tel. & Electronics, 443 F Supp 516); that disposition was thereafter affirmed by the United States Court of Appeals for the Third Circuit (582 F2d 259), and certiorari was denied by the Supreme Court (439 US 1129).
Although we reject defendants’ contention that what was determined in Auerbach to be the failure of the plaintiff in that action to disprove the disinterested independence and good faith of the members of the special litigation committee or the adequacy and appropriateness of its investigative procedures bars this plaintiff from his attempt to make such a showing in the present action, we conclude that the disposition of the Cramer action does have such effect.
Considering first the effect to be accorded the Auerbach action: Because the claim asserted in a stockholder’s derivative action is a claim belonging to and on behalf of the corporation, a judgment rendered in such an action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders (Auerbach v Bennett, 47 NY2d 619, 627-628, supra; Gerith Realty Corp. v Normandie Nat. Securities Corp., 266 NY 525; Brinckerhoff v Bostwick, 99 NY 185, 194). The foregoing rule is qualified by the condition that the judgment being raised as a bar not be the product of collusion or other fraud on the nonparty shareholders and by the futher condition that the shareholder sought to be bound by the outcome in the prior action not-have been frustrated in an attempt to join or to intervene in the action that went to judgment (see 50 CJS, Judgments, p 332; cf. Breswick & Co. v Briggs, 135 F Supp 397). The latter condition derives from the fact that corporate shareholders — who in principle have an equal interest and right in seeing that claims for wrongs done to the corporation are prosecuted — should not be compelled against their will to have the prosecution of the corporate claims depend on the diligence and ability of the first shareholder to institute litigation when their own *421 attempts to participate in the litigation have been rebuffed (see Dresdner v Goldman Sachs Trading Corp., 240 App Div 242) and no other appropriate provision for the protection of their interests has been made. So, in the present case, the fact that plaintiff Parkoff sought, as he did, to intervene in the Auerbach case and that his motion for intervention was opposed and denied, is a sufficient ground for rejecting defendants’ claim that the dismissal of that action precludes the present one.[5]
There is a further reason, too, why Auerbach does not bar the present suit — the underlying misconduct that was the gravamen of the complaint in that action was separate from and did not embrace that on which plaintiff Parkoff relies. Auerbach was concerned with alleged improper payments of corporate funds to public officials in foreign countries ; Parkoff sets out four causes of action alleging misuse of corporate funds and assets in (1) disposition of GTE’s interest in the Philippine Long Distance Telephone Company without receiving full and fair consideration therefor, (2) payment of bribes to domestic State government employees and private domestic customers to obtain sales of GTE’s products or services and concealment of such payments, (3) payment of illegal domestic political contributions, and (4) payment to employees of GTE subsidiaries in foreign countries of what was illegal compensation in those countries. Thus, the underlying activities and events on which the respective causes of action were based in the two actions were distinct and did not constitute parts of a single transaction or a series of connected transactions (Matter of Reilly v Reid, 45 NY2d 24).
While in our view the disposition of the Auerbach litigation is not conclusive as to the Parkoff claims, for reasons which follow we reach a contrary result with respect to the disposition of the derivative action commenced by stockholder Cramer in the United States District Court for the Eastern District of Pennsylvania. The Cramer action was *422 not limited solely to alleged wrongdoing by corporate officers and directors with respect to payments to foreign government officials as was Auerbach; by way of specification of facts concerning the acts complained of, the pleading incorporated by reference the 1976 proxy statement sent to GTE stockholders which in turn had reprinted in full the report of the audit committee appointed by the board following circulation, of reports of questionable activities by multinational corporations. The report itself disclosed that the committee’s review ranged far beyond simply the question whether corporate funds had been wrongfully paid to persons involved in foreign governments and that it also extended to the disposition of the Philippine telephone company interest held by GTE, to the propriety of payments made within the United States including payments made to State government employees for the purpose of securing GTE business and to payments of compensation to employees of GTE subsidiaries located in foreign countries. These latter matters, by Cramer’s effective incorporation of the committee’s report in his complaint, were thereby put in issue in that action. Inasmuch as these matters are also the substance of plaintiff Parkoff’s complaint, and because there has been no showing that he sought intervention and was excluded from participation in that action (as happened in the Auerbach litigation), we look to the disposition of the Cramer action and conclude that plaintiff is thereby barred from prosecuting the action now before us.
District Court Judge A. L. Higginbotham, before whom motions to dismiss or, in the alternative, for summary judgment dismissing the complaint had been made in the Cramer action, was called on to consider both the causes of action pleaded under the Federal securities statutes and the pender t State-law claims for breach of fiduciary duties by the GTE officers and directors named as defendants by shareholder Cramer. Although in a summary sentence in the early part of his opinion Judge Higginbotham stated that because it appeared that there were no viable Federal claims the pendent State claims would not be reached in light of its discretionary jurisdiction over such claims (443 F Supp, at p 520), the court nevertheless proceeded to an extended consideration of the merits of all pleaded claims and, *423 after concluding that the Federal causes of action were insufficient, stated with respect to the pendent State-law claims (at p 525) : “The decision of the state court in Auerbach v. Bennett[6] holds that as a matter of New York state law none of the defendants breached the fiduciary duty owed to GTE. The court also ruled that pursuant to the business judgment rule, GTE’s decision not to maintain any legal action was proper. Auerbach v. Bennett was a valid final judgment involving the same parties and the same cause of action alleged by Cramer. Therefore, the New York judgment bars the instant plaintiff’s pendent state claim under the doctrine of res judicata.” The court continued, stating that if res judicata did not preclude consideration of plaintiff’s State-law claims it would decline to exercise pendent jurisdiction (443 F Supp, at p 525). Although Cramer appealed from the District Court’s decision, the Court of Appeals, affirming that disposition, noted that there was no contention on the appeal that the District Court had erred in dismissing the State-law claims and, accordingly, the correctness of that dismissal was not decided (582 F2d 259, 266, n 8). The Cramer case must accordingly be treated as a disposition on the merits, affirmed on appeal. (See Restatement, Judgments 2d [Tent Draft No. 4], § 68, Comment o; cf. Malloy v Trombley, 50 NY2d 46; see O’Connor v G & R Packing Co., 53 NY2d 278.) [7]
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Wachtler, Fuchsberg and Meyer concur; Judge Gabrielli taking no part.
Order affirmed.

. Defendant Knowles died while the appeal was pending; the action was discontinued against him by stipulation.

. To the assertion that recognition of a generalized demand for disclosure as sufficient to cause postponement of a motion for summary judgment might be thought to authorize and countenance fishing expeditions, it suffices to observe that in this type of case the plaintiff must necessarily be given more latitude to discover than in most and that the appropriate counterbalance lies in the *418 vigilance of the court in its oversight of disclosure devices to issue appropriate protective orders so as to forestall their employment as instruments of corporate harassment without frustrating the legitimate interests of shareholder plaintiffs (CPLR 3103).

. Auerbach commenced an action in New York Supreme Court, Westchester County; Limmer brought suit in the United States District Court for the *419 Southern District of New York; Cramer proceeded in the United States District Court for the Eastern District of Pennsylvania. The latter two suits pleaded causes of action for Federal securities laws violations as well as causes of action for waste and breach of fiduciary duty asserted as pendent State-law claims.

. The special litigation committee later considered other shareholders’ actions subsequently brought, including the present litigation, and reached and reported to the board of directors the same conclusions with respect to those actions. (Second Supplemental Report of Special Litigation Committee, April 5, 1977.)

. Defendants can draw no comfort from the fact that Parkoff took no appeal from the denial of his application for intervention. Had defendants expected to impose res judicata consequences on Parkoff they should either have consented to, or at least refrained from opposing, his application for intervention. They cannot at once be the agents of his exclusion and yet lay claims to the same benefit as if he had been included.

. The reference was to the dismissal of the complaint by Supreme Court, Westchester County, by order of April 29, 1977, a disposition ultimately confirmed by this court by the decision reported in 47 NY2d 619.

. Appellant before us makes no claim that the disposition in Cramer was erroneous. Any such claim (on the ground, for instance that Cramer had sought and been denied intervention in Auerbach, or that the underlying transactions alleged in Cramer were different from those litigated in Auerbach, or that the decision in Auerbach relied on by the District Court was not a final judgment), even if made, would be unavailing, for the preclusive effect of a prior valid judgment in subsequent litigation on the same claim is in no way dependent on the correctness of the earlier judgment.