Marcel **GOLDBERGER** and Robert S. **Krauser** on behalf of Health-Chem Corporation, Perfection Print and Color Company, Inc., Time Chemical, Inc. and Custom Spray Products, Inc., Plaintiffs,

v.

Leon C. **BAKER**, Marvin M. Speiser, Marvin S. Caligor, Sy Baskin, George W. Gable, Gerald Chige, Roy Marcus, Melvin Shore, Walter C. Drost, Eugene L. Young, John J. Blumers, Health-Chem Corporation, Health Med Corporation and Medallion Group, Inc., Perfection Paint and Color Company, Inc., Time Chemical, Inc., and Custom Spray Products, Inc., Defendants.

No. 77 Civ. 2612 (GLG).

United States District Court, S. D. New York.

Oct. 20, 1977.

As Amended Oct. 31, 1977.

Donald M. Kresge, New York City, for plaintiffs.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for defendants, Baker, Caligor, Baskin, Gable, Chige, Marcus, Shore, Drost, Young, Blumers, Health Med Corporation & Medallion Group, Inc. by Franklin B. Velie, Theodore Altman, Paul W. Wexler, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for defendant; Marvin M. Speiser by Gary J. Langer, New York City, of counsel.

Blumberg, Singer, Ross, Gottesman & Gordon, New York City, for defendants, Health-Chem Corp., Perfection Paint & Color Co., Inc., Time Chemical, Inc., and Custom Spray Products, Inc. by Mathew H. Ross, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

Plaintiffs bring this derivative action on behalf of Health-Chem Corp., alleging that

Health-Chem's corporate parents, Health-Med Corp. and Medallion Group, Inc., looted Health-Chem and several of its subsidiaries through a series of fraudulent securities transactions. The complaint alleges that the acts constituted violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 (the 1934 Act), (15 U.S.C. §§ 78j(b), 78n(a)), and Rules 10b–5 and 14a–9 promulgated thereunder, (17 C.F.R. §§ 240.10b–5, 240.14a–9). Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion is granted with leave to plaintiffs to replead.

Plaintiff Goldberger became a shareholder in Health-Chem in 1976; plaintiff Krauser has been one since 1973.[1] Health-Chem stock is traded on the American Stock Exchange (Amex). Health-Chem is controlled by Health-Med, which in turn is controlled by Medallion. The individual defendants are various officers and directors of Health-Chem and three of its subsidiaries, Perfection Paint & Color Co., Time Chemical, Inc. and Custom Spray Products, Inc.

The complaint sets forth six different sets of transactions, which Health-Chem was allegedly forced by its parents to enter into, as violations of the securities laws: First, that defendants forced Health-Chem to make at least $900,000 in loans to its parents from 1971 to 1976. This is said to be a violation of a representation made in a 1971 prospectus and registration statement. Second, that defendants caused the three subsidiaries of Health-Chem to enter into sale lease-back transactions involving substantially all of their assets, thereby damaging Health-Chem. Third, that defendants caused Health-Chem to buy and lease-back certain computer equipment from Funding Systems Leasing Corp. at a damaging cost to Health-Chem. These transactions were

allegedly accompanied by misleading disclosure or nondisclosure in violation of Rule 10b–5. The complaint further alleges that certain proxy statements involving three more transactions, a stock option plan for executive compensation, the authorization of junior preferred stock and the election of directors, were misleading in violation of Rule 14a–9.

█ Of course, the plaintiffs' factual allegations must be considered true for purposes of the motion to dismiss for failure to state a claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The facts of each transaction will be considered in detail as they relate to plaintiffs' substantive claims.

### I. *Alleged Violations of Rule 10b–5*

The complaint states that Health-Chem made a public offering in 1971 pursuant to the Securities Act of 1933. As part of the offering, a prospectus and registration statement were filed which stated that Health-Chem's parents would not cause Health-Chem to loan funds to any of its parents, and explained that such a representation was necessary as a condition of listing on the Amex. Nonetheless, the complaint alleges that from 1971 to 1976 Health-Chem was caused to make at least $900,000 in such loans in return for "notes and/or other securities." The plaintiffs allege that at the times such loans were made, the defendants "did not publicly disclose and did not disclose to shareholders of Health-Chem that said loans were in violation of the prospectus representation . . . and that Health-Chem received less than fair and adequate consideration for such loans." (Complaint ¶ 12).

The complaint also states that in 1975 and 1976 defendants caused the three

---

**1.** Most of the transactions alleged by plaintiffs to be violations of the securities laws occurred after 1973. Several of the inter-company loan transactions, however, occurred before that time. It is immediately apparent that plaintiffs' ability to challenge pre-1973 transactions is doubtful under the contemporaneous ownership requirement in derivative actions. Fed.R.

Civ.P. 23.1(1); *Bangor Punta Operations, Inc. v. Bangor & Aroostock R.R.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). Because the Court has found that the complaint does not state a claim, however, it is not necessary to investigate which claims would be barred as arising before plaintiffs became Health-Chem shareholders.

Health-Chem subsidiaries to sell substantially all of their fixed assets to a group consisting of the individually named defendant insiders, who then leased back the assets to the subsidiaries. The consideration received by the subsidiaries consisted of both short and long-term promissory notes. Plaintiffs allege that at the time these sale lease-backs were entered into, "the defendants did not publicly disclose or disclose to shareholders of Health-Chem that said transactions would substantially damage Health-Chem." (Complaint ¶¶ 20, 25). The extent and nature of the disclosures actually made are not set forth in the complaint.

Finally, plaintiffs state that in 1976, Health-Chem was forced by defendants to enter into an agreement with Funding Systems Leasing Corp. under which Health-Chem purchased over $14 million worth of equipment from Funding Systems and leased back the equipment at a "cost of up to $14,300,000 to Health-Chem." (Complaint ¶ 36). Health-Chem allegedly issued a promissory note for part of the sale price, payable in 1985. Plaintiffs allege that defendants "did not disclose publicly or to the shareholders of Health-Chem . . . that (a) the sale lease-back resulted in Health-Chem committing more funds to the sale lease-back than the entire net worth of Health-Chem, . . . and (b) that the sale lease-back would decrease the earnings of Health-Chem and thereby depress the market price of the common stock of Health-Chem." (Complaint ¶ 39). Again, the disclosures actually made are not set forth.

■ The analysis of these derivative claims begins with the proposition that only a defrauded purchaser or seller of securities has standing to sue under Rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S.

956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). It is also clear that the Rule "protects corporations as well as individuals" who are purchasers or sellers. *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 10, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *see Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). Therefore, a shareholder suing derivatively may assert the rights of a corporation that has been defrauded in connection with the purchase or sale of securities. *See, e. g., Dasho v. Susquehanna Corp.*, 461 F.2d 11 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972).

■ As the Second Circuit recently stated, the problem with the application of Rule 10b–5 to derivative actions involving internal corporate transactions "has lain in the degree to which the knowledge of officers and directors must be attributed to the corporation, thereby negating the element of deception." *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977). As Judge Friendly explained in *Meridor*, the resolution of this problem has come in the theory that if the board or a majority of directors has a conflict of interest in the challenged transaction, even though complete disclosure is made to them, they could be held to have defrauded the corporation. *Id.*; *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir. 1976). *See* R. Jennings & H. Marsh, *Securities Regulation* 998–99 (1977). Of course, when no shareholder approval is required for a certain transaction, disclosure to a disinterested board is equivalent to disclosure to the corporation. *Wright v. Heizer Corp.*, 560 F.2d 236, 247 (7th Cir. 1977).[2]

■ The law having settled on the proposition that an interested board or controlling shareholder could be held to have deceived the minority interest by causing the corporation to enter into transactions with-

---

**2.** The exact composition of the Health-Chem Board is not stated in the complaint. Plaintiffs do allege, however, that all of the defendants "controlled the policies, practices and actions of Health-Chem." (Complaint ¶ 41). It is diffi-
cult to see how several of the defendants who are merely officers of Health-Chem subsidiaries can be said to have controlled Health-Chem policy or been influenced by the parent Health-Med.

out making adequate disclosure, and in so doing violate Rule 10b–5, the further question arose as to what constituted an actionable "deception." *Compare Popkin v. Bishop*, 464 F.2d 714 (2d Cir. 1972) with *Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). Because of the conflict of interest inherent in this type of case, some courts seemed to concentrate more on the improper conduct of the controlling shareholder rather than on the details of disclosure. *See Popkin v. Bishop*, 464 F.2d at 719.

Recently, in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court definitively held that deception and not mere unfairness was a necessary element of a derivative action under Rule 10b–5. In that case, a minority "squeeze out" under the Delaware short-form merger law had been held by the Second Circuit to violate the Rule, the court stating that "neither misrepresentation nor nondisclosure was a necessary element of a Rule 10b–5 action." It was this holding that the Supreme Court reversed. *See* 430 U.S. 470 & n. 8., 97 S.Ct. at 1299 & n. 8.

■ Now that it is clear that Rule 10b–5 does not reach breaches of fiduciary duties without some deception or misrepresentations by the controlling shareholder, the question remains as to what constitutes an actionable deception. In *Meridor, supra*, the Second Circuit construed *Green* in relation to the court's previous opinion in *Schoenbaum, supra*, and found that *Schoenbaum* could rest on the ground that

> "there is deception of the corporation (in effect, of its minority shareholders) when the corporation is influenced by its controlling shareholder to engage in a trans-

action adverse to the corporation's interests (in effect, the minority shareholders' interests) and there is nondisclosure or misleading disclosure as to the material facts of the transaction."

567 F.2d 209 at 217.

The court went further, however, in an attempt to forestall bootstrap allegations of deception made by minority shareholders and stated that after *Green*, "the existence of 'controlling influence' and 'wholly inadequate consideration' . . . can no longer alone form the basis for Rule 10b–5 liability . . . ." *Id.* Further, the court stated that "we do not mean to suggest that § 10b or Rule 10b–5 requires insiders to characterize conflict of interest transactions with pejorative nouns or adjectives." *Id.* at 218 n. 8. Even under the most narrow reading of *Green*, an allegation of deception must allege more than a mere failure to disclose the "unfairness" of a transaction.

Applying the law to the facts as alleged in this case, it becomes clear that the complaint as it now stands does not state a claim under Rule 10b–5. Assuming that Health-Chem was a seller or purchaser of "securities" within the meaning of the law in the loan and lease-back transactions,[3] it is apparent that no actionable deception of the minority interests has been stated.

■ First, as to the loans, plaintiffs allege that they were advanced in violation of the 1971 prospectus statement and that defendants failed to disclose this fact as well as the fact that the loans were for less than fair consideration.[4] The complaint does not allege that the terms of the loans were not disclosed or disclosed in a misleading manner. It alleges only that the terms were unfair and that the loans were inconsistent with company policy as stated in the 1971

---

**3.** Whether a promissory note is a "security" can be a difficult question under existing case law. *Compare Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976) (Friendly, J.) with *Emisco Indus., Inc. v. Pro's, Inc.*, 543 F.2d 38 (7th Cir. 1976). Defendants, however, have not raised this issue in their motion to dismiss, and there is no need for the Court to pursue it.

**4.** Plaintiffs could not base this claim on the prospectus alone, since any injury flowing from a misleading statement in that document would be to the purchasers in the offering, not to the corporation. *See Goldberg v. Meridor*, 567 F.2d 209 at 214 n. 3. Instead, plaintiffs claim that the disclosures at the time the loans were made were deficient in not pointing out the inconsistency with previously stated company policy.

prospectus. To hold that such an allegation was sufficient would be tantamount to asking defendants to "characterize" the transactions with "pejorative" words, and the failure to use such descriptions is not a 10b–5 violation. *Meridor, supra.* If the *Green* case means anything, it is that such an allegation is not a sufficient ·claim of deception. Similarly, the mere fact that the loans were inconsistent with previously stated policy and defendants did not disclose the inconsistency also does not rise to the level of an actionable deception. So long as the minority shareholders are not misled about the actual terms of the transactions, this Court sees no reason why every transaction in which a corporation wishes to engage should have to be measured against all statements of company policy previously made, in order to search for any possible inconsistencies. Plaintiffs do not allege that they were deceived as to the terms or conditions of the loans, and, based on their carefully inexplicit pleading, one would have to conclude that they were not. Accordingly, under *Green* and *Meridor*, the complaint does not presently state a claim under Rule 10b–5.

■ Similarly, the claims concerning the sale lease-backs of Health-Chem subsidiaries also do not allege sufficient deception under the Rule. These allegations state only that defendants failed to disclose that "said transactions would substantially damage Health-Chem." The alleged defect is in failing to predict the unfavorable result of the transactions. As such, it is not a violation of 10b–5. Nowhere in their complaint do plaintiffs state that they were deceived in any way about the terms or facts of these transactions.[5]

■ As to the final sale lease-back transaction, consummated with Funding Sys-

tems, the same result is mandated for identical reasons. There is not a sufficient allegation of deception. The complaint alleges that the defendants failed to disclose that the deal would result in Health-Chem committing more funds to the purchase than the net worth of the company, and that the deal would depress the market price of Health-Chem common stock. Plaintiffs do not allege that any terms of the transaction were withheld, only that certain conclusions and derogatory predictions were not made. Defendants cannot be liable for a mere failure to say that their deal was a bad one. This also is not an adequate allegation of deception under Rule 10b–5.

■ Moreover, the claim concerning the Funding Systems transaction fails for an even more basic reason. There is no allegation of conflict of interest on the part of any of the defendants and Funding Systems. Funding Systems is not named as a defendant, nor is its relation to any of the defendants explained. Without such a conflict of interest allegation, a derivative action under Rule 10b–5 cannot be maintained, since knowledge of the board will be attributed to the corporation. *Falkenberg v. Baldwin*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 96,086 (S.D.N.Y. June 13, 1977); *see Wright v. Heizer Corp.*, 560 F.2d 236 at 247. In short, this allegation is nothing more than a claim that Health-Chem has been badly managed. It is not a claim that the corporation was defrauded by an improperly influenced controlling shareholder or group of directors. Therefore, the complaint fails to state a claim under Rule 10b–5.[6]

## II. *Alleged Violations of Rule 14a–9*

Plaintiffs also allege three proxy violations under Rule 14a–9. The complaint

**5.** In their brief, plaintiffs restate their allegations concerning the sale lease-back transactions to say that defendants failed to disclose any facts of the transactions prior to the time they occurred. If true, this allegation might raise a substantial issue of whether in certain self-dealing situations, the parent has a duty under federal law to disclose the fact that the transaction is to occur, notwithstanding the absence of trading and in addition to the appli-

cable reporting requirements under the 1934 Act. *See Meridor*, 567 F.2d 209 at 221 n. 10. *Cf. Wright v. Heizer Corp.*, 560 F.2d 236, 248. *The instant complaint does not make such an allegation, however, and it would be unwise to explore this issue on these pleadings in their current form.*

**6.** If there were a sufficient allegation of deception in the complaint, the further issues of materiality and causation would be implicated.

states that Health-Chem shareholders, pursuant to a proxy statement and vote, increased the authorized shares of junior preferred stock in December, 1973. Paragraph 15 of the complaint continues:

"Contrary to the representations of the defendants, the defendants have caused Health-Chem each year to redeem large amounts of junior preferred stock held by Health-Med solely for the purpose of . . . distribut[ing] preferential dividends to certain of the individual defendants . . . ."

Second, the complaint alleges that a proxy statement used in 1976 to gain approval for a stock option plan for certain Health-Chem officers was misleading in violation of Rule 14a–9. The deficiency in disclosure is alleged to be the failure to disclose the prevailing market price for Health-Chem common stock and the "legal significance that shareholder ratification could be expected to have . . . ." (Complaint ¶ 29).

Finally, plaintiffs allege that throughout the period from 1973 to 1977, proxy statements regarding the election of all defendant directors were deficient because they failed to disclose "the foregoing fraudulent acts, conspiracy, and scheme to defraud . . . ." (Complaint ¶ 33). Plaintiffs demand that the individual defendants disgorge all compensation and benefits received as a result of their positions in Health-Chem, and that all actions taken at Health-Chem annual meetings from 1973 to 1977 be set aside.

The Rule 14a–9 allegations of plaintiffs are even more deficient than those discussed above under Rule 10b–5. As to the redemption of the junior preferred stock, plaintiffs make no allegation of a causal relationship between the proxy statement used to authorize an increase in shares, and the alleged fraudulent redemption of shares by Health-Med. There is no allegation that the redemption was authorized or otherwise brought about by the shareholders' vote authorizing the issuance of more shares. Causation is, of course, a necessary element under Rule 14a–9. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). As Judge Pierce recently stated:

"An essential element of any § 14(a) claim is causation, i. e., a showing of both 'loss causation'—that the § 14(a) violation caused the economic harm alleged and 'transaction causation'—that the proxy violations themselves caused the transaction in question."

*Lewis v. Elam*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 96,013, at 91,555 (S.D.N.Y. April 5, 1977). *See Markewich v. Adikes*, 422 F.Supp. 1144 (E.D.N.Y.1976). There is simply no allegation here of a causal relationship between the allegedly deficient proxy statement and the allegedly fraudulent redemption of junior preferred shares owned by Health-Med.

It might be possible, however, to frame this same claim under a Rule 10b–5 theory, alleging that the redemption of junior preferred (the "purchase" by the corporation) was accompanied by misleading or non-existent disclosure by the parent.[7] But even considered under this theory, the complaint does not improve. There is no allegation in the complaint of when or in what form such

---

Whether such materiality and causation can be shown apparently would depend on what state remedies would have been available to plaintiffs had full disclosure been made before these transactions were consummated. *See, e. g., Sante Fe Indus., Inc. v. Green*, 430 U.S. at 474 n.14, 97 S.Ct. at 1301 n.14; *Goldberg v. Meridor*, 567 F.2d 209. Although such actual causation need not be shown in other contexts, *see, e. g., Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1976), and

its use in this context may need substantial further refinement, *see Meridor, supra* at 223 & nn. 7 & 9 (Meskill, J., dissenting), there is no need to pursue these issues at this time.

7. From the complaint, it is unclear which theory plaintiffs pursue regarding the claims concerning the redemptions. Of course, it is unnecessary for the Court to express an opinion as to whether the redemption in this context is a purchase which could give rise to liability under Rule 10b–5. *Compare Drachman v. Har-*

misrepresentations were made. In fact, the only allegation of deception or nondisclosure is the terse statement that the redemptions were "contrary to the representations of the defendants." Considered under Rule 10b–5, this bare allegation is insufficient under Fed.R.Civ.P. 9(b). "There must be further identification of what statements were made and in what respects they were false, misleading or inaccurate . . . ." *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246 (S.D.N.Y.1975); *see Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972).

In the instant complaint, there is no allegation of deception under Rule 10b–5, nor is there an allegation of causation or deception under Rule 14a–9. In order for plaintiffs to state a securities claim, there must be a more particularized statement of the transactions and the alleged misrepresentations accompanying them. Plaintiffs' apparent unhappiness with Health-Chem's management does not, by itself, establish a federal securities claim.

 Similarly, the allegations concerning the proxy statement used to authorize the stock option plan are insufficient. The only complaint plaintiffs seem to have about this statement is that it failed to state the prevailing market price of Health-Chem common stock and also failed to compute the value of the options for which shareholder approval was sought. The market price of Health-Chem common, of course, was a matter of public knowledge that anyone could acquire by reading a newspaper with an Amex listing. Defendants were entitled to assume that reasonable shareholders would know the prevailing price of their stock. *Johnson v. Wiggs*, 443 F.2d 803, 806 (5th Cir. 1971); *see Joyce v. Joyce Beverages, Inc.*, 430 F.Supp. 676 (S.D. N.Y.1977) (plaintiff had constructive knowledge of differences between state corporation laws). There was no reason for defendants to state the market price of common stock on the date of the proxy statement or to attempt to calculate by simple arithmetic the value of the proposed op-

tions. The annual meeting at which the options were approved took place one month after the date of the proxy statement, and no doubt the price of common stock could have changed by then, with a resulting change in the options' value. In such event, a previous statement of price or value would have been incorrect and undoubtedly misleading by the time of the meeting.

Plaintiffs do not allege that any other term of the proposed option plan was omitted or misstated in the proxy statement, and the allegation that the statement failed to disclose the "legal significance" of the option plan is so vague as to defy analysis. If there was a material deficiency in the proxy statement, plaintiffs have not stated it.

Finally, plaintiffs allege that proxy statements relating to the election of directors over a five-year period were deficient because they did not disclose the previously alleged "fraudulent acts" and "conspiracy" carried out by the defendants. Since the Court has found that the complaint does not state a claim regarding the alleged "fraudulent acts," it would be difficult to sustain this allegation as a successful one under Rule 14a–9. Moreover, as one court recently stated, "[n]o case [has] held that the proxy rules are violated because management has allegedly mismanaged the company, and the proxy statement does not say so." *Markewich v. Adikes*, 422 F.Supp. 1144, 1147 (E.D.N.Y.1976); *see Levy v. Johnson*, [1976–1977] Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D.N.Y. Feb. 15, 1977); *Walner v. Friedman*, 410 F.Supp. 29 (S.D.N.Y.1975). This allegation merely summarizes the others in an attempt to rescind all acts of directors at all subsequent annual meetings. It adds nothing to plaintiffs' claims of fraud previously discussed, and it does not state a claim under Rule 14a–9.

### III. *Conclusion*

From the foregoing analysis, it seems that plaintiffs' complaint is an attempt to

vey, 453 F.2d 722, 737 (2d Cir. 1972) (en banc) with *Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523 (9th Cir. 1976). *See also*

*Green v. Hamilton Int'l Corp.*, 437 F.Supp. 723 (S.D.N.Y.1977).

transform what might be valid claims under state law into federal securities law claims. This increasingly popular tendency among litigants has recently met firm disapproval by the Supreme Court. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. at 478, 97 S.Ct. at 1303. As the complaint now stands, plaintiffs have not alleged sufficient facts to form the basis of a claim under either Rule 10b–5 or Rule 14a–9.

The Court acknowledges, however, that it should not be quick to dismiss a complaint unless the complaint fails to state a claim under any conceivable set of facts. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1974). This proposition is counterbalanced somewhat by Fed.R. Civ.P. 9(b) which requires that fraud be alleged with particularity. *See Rich v. Touche Ross & Co., supra.* As it stands now, this complaint is a jumble of vague allegations of corporate mismanagement and waste which on their face do not state a claim under the federal securities laws. The Court, however, is willing to grant leave to plaintiffs to replead if they think that a second effort at framing their allegations would be more successful.

Therefore, defendants' motion to dismiss is hereby granted with leave to plaintiffs to amend their complaint.

SO ORDERED.