Irving KAPLAN and Frances
Kaplan, Plaintiffs,

v.

William F. BENNETT et al., Defendants.

Robert SOSHNICK, Plaintiff,

v.

William F. BENNETT et al., Defendants.

Nos. 77 Civ. 576, 77 Civ. 730 (CHT).

United States District Court,
S. D. New York.

Feb. 8, 1979.

Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiffs; Jared Specthrie, A. Arnold Gershon, New York City, of counsel.

Dean C. Rohrer, New York City, for defendant Gen. Tel. & Electronics Corp.; Samuel J. Wilson, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendants James W. Walter, Nelson J. Darling, Jr. and George A. Murphy; Peter H. Kaminer, Stephen A. Weiner, Susan S. Egan, New York City, of counsel.

Garwin & Bronzaft, New York City, for plaintiff; Bertram Bronzaft, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants John J. Douglas, Theodore F. Brophy and Leslie H. Warner; Steven J. Glassman, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Arthur Andersen & Co.; George F. Vary, James D. Zirin, New York City, Wilson & McIlvaine, Charles W. Board, Chicago, Ill., of counsel.

## OPINION

TENNEY, District Judge.

Plaintiffs Irving Kaplan and Frances Kaplan are suing derivatively on behalf of General Telephone & Electronics Corporation ("GTE"), alleging violations of sections 10(b), 12(b), 13(a) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78*l*(b), 78m(a), 78n(a) ("the Act"), and waste of assets and breach of fiduciary duties under state law.[1] Plaintiff Robert Soshnick is also suing derivatively and alleging violations of sections 13(a) and 14(a) of the Act and of state law.[2] Jurisdiction is founded upon section 27 of the Act, 15 U.S.C. § 78aa, and the principles of pendent jurisdiction. These companion motions, jointly made by defendants,[3] seek a stay of the pending actions or, in the alternative, summary judgment based on principles of res judicata and collateral estoppel or dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

Generally, the complaints allege that defendants caused and permitted GTE to make improper disbursements of funds and assets to officials and employees of foreign and domestic governments in the form of commercial bribes, kickbacks and rebates. Additionally, they allege that the individual defendants caused and permitted the improper reflection of the transactions on the books and records of GTE and the making of false and misleading statements in filings with the SEC and in annual reports and proxy statements issued to shareholders. Soshnick also alleges that Arthur Andersen & Co. breached its obligation to GTE in the performance of its auditing duties, and the Kaplans assert that the individual defendants defrauded the corporation in connection with the purchase and sale of a security through the illegal transactions.

In opposing these motions, plaintiffs proffer details of allegedly illegal payments to Iranian government officials and the consequent filings of misleading documents with the SEC and Iranian government, and of the sale by GTE of its substantial interest in Philippine Long Distance Telephone Co. ("PLDT") to a group designated by officials of the Philippine government. As to the last transaction, GTE assisted in financing the sale in part through an arrangement whereby GTE would pay a Bahamian company (owned or controlled by the purchasing group) commissions on equipment sales to PLDT. (*See infra* for a further discussion of the PLDT transaction.)

### History

A preliminary review of the facts and history surrounding these cases is necessary to a consideration of the issues raised in the instant motions. To begin, the March 15, 1976 proxy statement to GTE shareholders disclosed the contents of a special investigative report of the Audit Committee of the GTE Board of Directors ("Audit Committee Report"). The investigation had been conducted to determine whether GTE or its related companies had made improper payments between January 1, 1971 and December 31, 1975. Although the Audit Committee concentrated on the period between

---

1. Named as defendants in the *Kaplan* complaint are: GTE, William F. Bennett, Theodore F. Brophy, Nelson J. Darling, Jr., John J. Douglas, Charles G. Farris, William M. Fuller, Theodore S. Gary, Richard W. Jones, John H. Knowles, George A. Murphy, John H. Page, James W. Walter and Leslie H. Warner.

2. Named as defendants in the *Soshnick* complaint are: GTE, Arthur Andersen & Co., William F. Bennett, Howard W. Blauvelt, Theodore F. Brophy, Nelson J. Darling, John J. Douglas, Charles G. Farris, William M. Fuller, Theodore S. Gary, Richard W. Jones, John H. Knowles,

George A. Murphy, John H. Page, James W. Walter, Leslie H. Warner and Dr. John T. Dunlop.

3. Defendants GTE, Douglas, Walter, Darling and Murphy move in the *Kaplan* action; defendants GTE, Arthur Andersen & Co., Brophy, Douglas and Warner move in the *Soshnick* action. Plaintiffs in both actions oppose the motions. Soshnick has adopted the Kaplan memorandum of law and the legal arguments and position contained therein.

1971 and 1975, "in instances in which a questionable payment, transaction or arrangement during the period was discovered, the Committee's review went back to the inception of that transaction or arrangement even if prior to January 1, 1971." Audit Committee Report, Exh. 1–B to Affidavit of Joel P. Mellis, sworn to June 29, 1977 ("Mellis Affidavit").

The Audit Committee Report revealed that substantial payments had been made improperly to, or for the benefit of, government officials and that payments in the form of commercial kickbacks, rebates or bribes had been made to private foreign customer officials. The Report also described payments under a commission arrangement arising out of the sale by GTE of its substantial interest in a foreign customer, at the behest of a foreign government, to a group of foreign nationals. Audit Committee Report at 25–26. Defendants Warner, Brophy, Douglas and Bennett, in varying degrees, were found to have had knowledge of and to have been involved in the commission and sale transaction. Defendant Bennett was found to have had knowledge of and/or to have been involved in additional transactions. *Id.* at 43–45. The Report further stated that there was no evidence that the defendants profited personally from the transactions. *Id.*

Upon disclosure of the Audit Committee Report, three derivative suits were instituted on behalf of GTE. *Auerbach v. Bennett*, No. 572/77 (Sup.Ct. Westchester Co. Apr. 29, 1977),[4] was commenced against officials of GTE and Arthur Andersen & Co. The complaint charged that the illegal payments were a waste of corporate assets and that in permitting the payments defendants had breached their fiduciary duties to the corporation. *Limmer v. General Telephone & Electronics Corp.*, [1977–1978] Fed.Sec.L. Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977),[5] and

*Cramer v. General Telephone & Electronics Corp.*, 443 F.Supp. 516 (E.D.Pa.1977),[6] also made state law claims and added claims under the federal securities laws. *Limmer* alleged that the failure to disclose the transactions in reports filed with the SEC violated section 13(a) of the Act and that the failure to disclose the activities in proxy statements violated section 14(a). *Cramer* similarly alleged violations of sections 13(a) and 14(a) and additionally alleged violations of sections 10(b) and 12(b).

Purportedly acting pursuant to section 712 of the New York Business Corporation Law (McKinney 1963 & Supp. 1978–1979) (statute authorizing grant of power to the board to create committees to act with authority of the board), the GTE Board of Directors formed a Special Litigation Committee composed of Messrs. Blauvelt and Dunlop (both named as defendants in the instant *Soshnick* Complaint), and Mr. James R. Barker, assisted by the Hon. Charles S. Desmond, retired Chief Judge of the New York Court of Appeals, as Special Counsel. In a report dated November 22, 1976 the Special Litigation Committee determined that the federal claims in *Limmer* and *Cramer* were without merit as were the state law claims in *Auerbach, Limmer* and *Cramer* and that prosecution of the claims was not in the best interest of GTE or its shareholders. November 22, 1976 Report of Special Litigation Committee, Exh. 1 to Mellis Affidavit. Pursuant to this determination, motions to dismiss were made in *Auerbach, Limmer* and *Cramer*.

Subsequently, in January 1977, the SEC filed a complaint against Philippine Long Distance Telephone Co., Philippine Telecommunications Investment Corp. and Stamford Trading Co., and filed one against GTE. The SEC complaints described in detail the transactions disclosed in the Audit

---

4. Named as defendants in the *Auerbach* action were: GTE, Arthur Andersen & Co., Bennett, Brophy, Douglas, Farris, Fuller, Gary, Jones, Knowles, Murphy, Page, John B. Prizer, Walter and Warner.

5. Named as defendants in the *Limmer* action were: GTE, GTE International, Inc., Warner,

Bennett, Brophy, J. J. Clerkin, Jr., Darling, Douglas, Farris, Fuller, Gary, Knowles, Murphy, Page, Prizer and Walter.

6. Named as defendants in the *Cramer* action were: GTE, Arthur Andersen & Co., Warner, Brophy, Douglas, and Bennett.

Committee Report. Without admitting or denying the allegations in the SEC complaint, GTE consented to entry of an injunction. Thereafter, additional derivative suits were instituted in federal and state courts, among which suits were the instant *Kaplan* and *Soshnick* actions. The Special Litigation Committee undertook to assess the position that GTE should take with respect to these new actions. In a second report, dated April 5, 1977, the Special Litigation Committee again determined that the federal and state claims were without merit and that their prosecution would not be in the best interest of GTE or its shareholders. April 5, 1977 Second Supplemental Report of the Special Litigation Committee, Exh. R to Mellis Affidavit.

In April 1977, summary judgment in favor of defendants was granted in *Auerbach* based on the court's determination that the Special Litigation Committee's decision not to prosecute was conclusive under the business judgment rule. *Auerbach v. Bennett*, No. 572/77 (Sup.Ct. Westchester Co. Apr. 29, 1977). In August 1978, the Second Department of the Appellate Division reversed, holding that at least prior to discovery concerning the independence of the Committee and the scope of its investigation, summary judgment was improper. 64 App.Div.2d 98, 408 N.Y.S.2d 83 (2d Dep't 1978). The Appellate Division granted leave to appeal to the New York Court of Appeals, certifying a question of law to that court. Order dated October 12, 1978.

In March 1977, Judge Conner dismissed the *Limmer* section 14(a) claim.[7] *Limmer v. GTE*, [1977–1978] Fed.Sec.L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977). In August 1977, Judge Higgenbotham granted summary

judgment in the *Cramer* action as to the sections 13(a) and 14(a) and pendent state law claims, and he dismissed the sections 10(b) and 12(a) claims. *Cramer v. GTE*, 443 F.Supp. 516 (E.D.Pa.1977). The disposition of the sections 10(b), 13(a) and 14(a) claims was appealed to the Court of Appeals for the Third Circuit, which affirmed, although on different grounds. *Cramer v. GTE*, 582 F.2d 259 (3d Cir. 1978), *cert. denied*, 47 U.S.L.W. 3497 (Jan. 23, 1979). Relying on principles of res judicata and collateral estoppel, defendants here assert the *Limmer* and *Cramer* judgments as bars to the instant suits.[8]

*Preclusion*

To effect a bar to a subsequent suit, the principles of res judicata require a judgment on the merits rendered in the prior action by a court of competent jurisdiction, and an identity of parties and causes of action in both suits. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Collateral estoppel requires the issue necessarily decided on the merits in the prior suit to be identical to the one in the subsequent suit, and the party against whom the bar is asserted to have been a party to the earlier suit and to have had a full and fair opportunity to litigate the issue. *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 955–56 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964);[9] *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960–61, 246

---

**7.** Limmer's section 13(a) claim was voluntarily withdrawn. *Limmer v. GTE, supra*, ¶ 96,111, at 92,002 n.1.

**8.** Defendants also asserted the *Auerbach* judgment as a bar, and currently seek a stay of these proceedings pending a decision of the New York Court of Appeals on the scope of the business judgment rule. Due to the disposition here, it is unnecessary to consider whether a stay would be appropriate or whether the business judgment rule bars the instant suits.

**9.** The portion of the *Zdanok* opinion concerning the contractual rights of the parties was overruled, *Local 1251, UAW v. Robertshaw Controls Co.*, 405 F.2d 29 (2d Cir. 1968), but the portion concerning the preclusive effects of a prior judgment remains viable. *See, e. g., Kreager v. General Electric Co.*, 497 F.2d 468, 471–72 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 530, 42 L.Ed.2d 319 (1974); *United States v. Frank*, 494 F.2d 145, 160 (2d Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974).

N.E.2d 725 (1969). The party asserting the bar need not have been a party to the prior suit. *Id.* at 70, 298 N.Y.S.2d at 959, 246 N.E.2d 725. Collateral estoppel effects a bar only as to those matters actually raised and determined in the prior suit. *Expert Electric, Inc., supra*, 554 F.2d at 1233.

 Plaintiffs first contend that the previous actions did not involve the same parties and thus cannot bar the instant suits. However, neither the preclusive effect of *Limmer* nor that of *Cramer* can be avoided by claiming that the party against whom the bar is asserted here differs from the party in the prior suits. A derivative action represents prosecution of a claim belonging not to the individual shareholder but to the corporation on whose behalf suit is brought. *Ross v. Bernhard*, 396 U.S. 531, 538–39, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). To determine whether the parties are identical, the court looks to the identity of the real party in interest, the corporation, rather than to the identity of the nominal party seeking to champion the corporate claim. *See, e. g., Papilsky v. Berndt*, 466 F.2d 251 (2d Cir.), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972) (prior determination not on the merits); *Saylor v. Lindsley*, 391 F.2d 965 (2d Cir. 1968). That GTE was the real party in interest in the other suits and is so here, regardless of the nominal plaintiffs, satisfies the requirement that the parties be the same. Thus, at least one condition precedent to preclusion is satisfied.

Plaintiffs' primary argument against according preclusive effect to the *Limmer* and *Cramer* judgments, however, is that the causes of action asserted here differ materially from those asserted in the prior suits. Various tests have been stated for determining whether a prior suit involved a different cause of action. One approach is to determine whether the rights and interests established by the first judgment would be impaired by a different judgment in the

subsequent suit. *Schuylkill Fuel Corp. v. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929). Another test is to look to whether "the primary right and duty and the delict or wrong are the same in each action." *Hall v. Tower Land and Investment Co.*, 512 F.2d 481 (5th Cir. 1975). Similarly, a court may consider "whether the evidentiary basis of the first and second actions is the same . . . or whether the essential facts and issues were similarly presented in both cases." *Expert Electric, Inc., supra*, 554 F.2d at 1234 (citations omitted). The focus in all the standards articulated is "the factual predicate of the several claims asserted," *id.*, and differences in legal theory or prayers for relief do not determine whether separate actions are stated. *See Saylor v. Lindsley, supra*, 391 F.2d at 969 n. 6; *Antonioli v. Lehigh Coal and Navigation Co.*, 451 F.2d 1171, 1177 (3d Cir. 1971), *cert. denied*, 407 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972).

Plaintiffs contend that the causes of action are not the same because they allege a wrong commencing at a period of time earlier than that alleged in the prior suits and because they state in greater detail the acts forming the basis for suit. They argue that the bar effect of the prior adjudications should be avoided because the defendants' nondisclosure of the corporate transactions caused the defects found in the earlier suits. However, plaintiffs cannot so avoid the earlier judgments.

The prior actions, based on the findings of the Audit Committee, clearly involve the same transactions about which plaintiffs complain in the instant suits, although they were there alleged in less detail. The Audit Committee, charged with investigating the 1971–1975 period, nevertheless investigated activities occurring prior to that period, and it appears that the *Cramer* court was also aware of the SEC complaint against GTE alleging in detail the same activities for which Cramer sought relief.[10] Additionally, the issues involved in the prior suits are the same as those presented here.

---

10. In a supplemental memorandum, Cramer specifically addressed the court's attention to the SEC complaint. *See* Supplemental Memorandum Re Defendants' Motions for Dismissal in *Cramer v. GTE*, Appendix A of Reply Memorandum of General Telephone & Electronics Corporation.

■ In *Limmer*, the court dismissed on the merits plaintiffs' claim that defendants violated section 14(a) by failing to disclose in proxy statements the facts surrounding the improper disbursements. Noting that section 14(a) is directed against injury caused by corporate action for which authorization was obtained from the shareholders upon incomplete and misleading proxy materials, the court found that any injury suffered by GTE came not from an uninformed shareholder vote but from the breach of the directors' fiduciary duty. The court concluded that "the connection between the exercise of corporate sufferage and the acts of waste from which plaintiffs seek relief is too tenuous to support 'federal intervention in a cause of action otherwise squarely posited on violations of state law.'" [1977–1978] Fed.Sec.L.Rep. (CCH) ¶ 96,111, at 92,002 (*quoting Hoover v. Allen*, 241 F.Supp. 213, 229 (S.D.N.Y.1965)). The section 14(a) claim asserted by both the Kaplans and Soshnick involves the same issue considered in *Limmer* and is thus precluded by that judgment.

■ In *Cramer*, the Third Circuit rejected the section 13(a) claim predicated upon the failure to disclose in required filings with the SEC the transactions constituting corporate waste. It affirmed the grant of summary judgment dismissing that claim upon a determination that section 18, 15 U.S.C. § 78r, was not available as a means of relief. That section provides a civil remedy for injury resulting from the purchase or sale of a security in reliance on a misleading filing within the meaning of section 13(a).[11] Although the sale of the ownership interest in the foreign subsidiary was deemed a sale of securities under the Act, "that sale was not made in reliance upon a false statement in an annual report filed by GTE with the SEC." 582 F.2d at 269–70. The court concluded that "[a]bsent that causal nexus" the complaint failed to state a claim for relief in favor of GTE. *Id.* at 270. The Third Circuit's determination with respect to the section 13(a) claim is binding here.

■ The section 12 claim asserted here is similarly precluded by *Cramer*. There the district court's dismissal of the section 12 claim, which was not appealed, was based upon its determination that the plaintiff failed to meet the standing requirements of section 18.[12]

In *Cramer* the Third Circuit also affirmed the dismissal of the section 10(b) claim; however, the court's reasoning differed from that in the district court, and its conclusion is inapposite here. The court found that the complaint stated a good cause of action under section 10(b) and rule 10b–5, holding that GTE's sale of its ownership interest in the foreign customer constituted a sale of a security; that the alleged fraud involving the financing package whereby GTE paid commissions on its equipment sales was in connection with the sale of a security; that GTE's partial funding of the purchase of its own stock established a prima facie claim of injury; and that the complaint adequately alleged scienter on the part of defendants. *Id.* at 270–73. Nevertheless, it affirmed the district court's dismissal of the claim because Cramer had failed to make a demand upon the board of directors as required by Fed.R.Civ.P. 23.1. *Id.* at 277.

■ A decision based upon a failure to satisfy a procedural requirement is not to be given preclusive effect. *See Saylor v. Lindsley, supra,* 391 F.2d at 969; 7A Wright & Miller, *Federal Practice & Procedure*

11. The Third Circuit grounded its decision on the failure to meet the "reliance" requirement of section 18 and did not rely on plaintiff's failure to make a demand on the board of directors in dismissing the section 13(a) claim, although it did so with respect to the section 10(b) claim.

12. The district court found that the complaint contains none of the allegations required to establish standing under § 18. There is no allegation that the corporation relied on any false or misleading filings in making any sale; there is no allegation that any filing affected the price of GTE securities. Finally, there is no causal nexus made, or even attempted, between any filing and any alleged loss which GTE suffered. 443 F.Supp. at 525.

¶ 1840 (1972). However, in the instant case, the Kaplans did not make a demand on the board of directors, but asserted the futility of such a gesture. In light of the position taken by the board in the prior derivative suits and the fact that the board members are defendants here, it is clear that a demand would indeed have been futile in the instant case. *See In re Ceasars Palace Securities Litigation*, 360 F.Supp. 366, 392–93 (S.D.N.Y.1973). Therefore plaintiffs here are not barred from asserting a cause of action under section 10(b) [13] on the basis of the Third Circuit's dismissal. Nevertheless, this Court concludes that the complaint fails to state a claim under section 10(b).

Plaintiffs assert that the sale by GTE of its substantial interest in its Philippine subsidiary, PLDT, supports a valid claim under section 10(b). They allege the following history: The defendant directors caused GTE to sell its controlling interest in PLDT to a group designated by officials of the Philippine government ("Investment Group"). GTE participated in the formation of the purchaser, Philippine Telecommunications Investment Corporation ("Investment"), and was purportedly to receive a 22½% interest in Investment, paying $696,768. The directors were aware that Investment Group was unable to finance the purchase of PLDT and agreed to accept a $7,000,000 note in partial payment along with $7,769,349 in cash, of which $696,768 had just been paid by GTE for the purchase of 22½% of Investment common stock. Additionally, the directors agreed that GTE would pay to Stamford Trading Company ("Trading"), a Bahamian company owned or controlled by Investment Group, commissions on equipment sales by GTE to PLDT without regard to services rendered or to the value of such services. Furthermore, defendants caused GTE to grant to Investment an option to purchase an interest in GTE Industries, Inc., another GTE subsidiary, which option was exercised in 1970 by the giving of an interest-free note with the agreement to pay to GTE the dividends from the stock of GTE Industries. GTE was further caused to lend $1,000,000 to individuals in Investment Group and to agree to pay to Trading a $1,000,000 commission on an equipment sale to PLDT to finance the repayment of the loan. GTE was caused to restructure and reduce Investment's debt to GTE for the purchase of PLDT through a loan guarantee and commission payments due under the Trading agreement. In 1976, GTE rescinded the commission agreement and thereby relinquished its purported interest in Investment and its right to receive payment on the loan and notes.

Plaintiffs claim that the transactions were fraudulent as to GTE. Defendants allegedly caused GTE to receive "virtually nothing" for its interest in the subsidiary: "The cash portion of the purchase price was secretly returned to the purchasers by General Telephone through the vehicle of kickbacks or bribes or in the form of sham commissions to Trading. . . . . General Telephone was caused by its directors to sell stock for far less than full value and then be mulcted of the proceeds of the sale." Plaintiffs' Memorandum of Law at 6. Plaintiffs claim that GTE was thus deprived of a substantial portion of the purchase price for PLDT. Finally, plaintiffs allege that defendants concealed these facts from the public shareholders of GTE and thereby from GTE itself.

Plaintiffs seek to hold defendants liable for the alleged fraud upon the corporation under section 10(b), relying on *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). There, stock of the subject corporation was sold to an individual who, with

---

**13.** Defendants incorrectly argue that the dismissal of the section 14(a) claim in *Limmer* precludes the section 10(b) claim here. The necessary elements of a cause of action under section 10(b) differ materially from those under section 14(a). Section 14(a) is directed against misstatements and omissions in proxy materials which affect the voting process. *See J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Section 10(b), on the other hand, is directed against fraudulent or manipulative devices employed in connection with the purchase or sale of a security.

others, conspired to pay for the stock with the corporation's own assets. Through a series of transactions, those individuals obtained the stock of the corporation and, as stockholders and directors, installed another individual as president and caused the corporation to sell some of its securities. The proceeds of that sale were then used to pay for the previously acquired stock. The Supreme Court found that the acts constituted a "fraud or deceit" upon the corporation: although the securities had been sold at the market price, "the seller was duped into believing that it, the seller, would receive the proceeds." *Id.* at 9, 92 S.Ct. at 167. The Court concluded that the corporation "was injured as an investor through a deceptive device which deprived it of any compensation for the sale of its valuable block of securities," *id.* at 10, 92 S.Ct. at 168, and thus it had a cause of action under section 10(b) and rule 10b–5.

Defendants do not argue that plaintiffs have failed to allege the sale of a security in the sale by GTE of its interest in PLDT; however, they contend that plaintiffs have failed to allege a claim cognizable under section 10(b) because plaintiffs have failed to allege that the corporation was deceived. This argument implicates the fundamental issue of constructive knowledge and deception addressed in *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), where the Second Circuit noted that "[t]he problem with the application of § 10(b) and Rule 10b–5 to derivative actions has lain in the degree to which the knowledge of officers and directors must be attributed to the corporation, thereby negating the element of deception." *Id.* at 215.

### "Deceiving" the Corporation

The *Goldberg* opinion followed the Supreme Court decision in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), which rejected a federal cause of action under section 10(b) asserted in a challenge to the merger of parent and subsidiary corporations. Under the applicable short-form merger statute,

only post-merger notice to shareholders was required and a right of appraisal was available to dissatisfied shareholders. Full disclosure had been made in the post-merger notice, but plaintiff challenged the merger under section 10(b) as unfair in the price offered for the minority shares and as an attempt to "freeze out" the minority. The Supreme Court stated that a claim of fraud and breach of a fiduciary duty could be made under rule 10b–5 "only if the conduct alleged can fairly be viewed as 'manipulative or deceptive' within the meaning of the statute," 430 U.S. 473–74, 97 S.Ct. 1292, 1301, and concluded that the failure to allege a misrepresentation or failure to disclose precluded a claim of deception.

In *Goldberg,* the derivative suit brought on behalf of the subsidiary attacked as "grossly unfair" the sale by the subsidiary of its securities to its parent corporation in exchange for the overvalued assets of the parent. The *Goldberg* court emphasized the continuing viability in the wake of *Santa Fe* of the proposition that a corporation could be defrauded notwithstanding that the entire board had full knowledge of the facts if the board "had an interest in a transaction adverse to [the corporation]." 567 F.2d at 215. The court assumed that under *Santa Fe* the mere allegations of "controlling influence" and "wholly inadequate consideration" were insufficient to state a claim under rule 10b–5, but stated that it did "not read [Santa Fe v.] Green as ruling that no action lies under Rule 10b–5 when a controlling corporation causes a partly owned subsidiary to sell its securities to the parent in a fraudulent transaction and fails to make a disclosure or, as can be alleged here, makes a misleading disclosure." *Id.* at 218. *See also Comment, Suits for Breach of Fiduciary Duty Under Rule 10b–5 After Santa Fe Industries, Inc. v. Green,* 91 Harv.L.Rev. 1874 (1978) (discussing the concept of constructive deception in nonparticipant transactions and concluding that constructive deception in the form of self-dealing on the part of the board or controlling shareholder influence is consistent with *Santa Fe* ). The *Goldberg* court determined that the failure adequately to

disclose the facts of the transaction distinguished the case from *Santa Fe*. Furthermore, the court determined that the inadequate disclosure was material because the shareholders had available to them the remedy of injunction under New York law and thus could have prevented the parent's improper use of the assets of the subsidiary.[14]

Other recent cases have addressed the issue of constructive knowledge precluding a claim of deception. For example, in *Falkenberg v. Baldwin*, [1977–1978] Fed.Sec.L. Rep. (CCH) ¶ 96,086 (S.D.N.Y.1977), plaintiff, suing derivatively, alleged that a failure to disclose certain corporate liabilities artificially inflated the price of the corporation's stock and that the corporation was injured when it purchased its own shares for employee benefit programs and at other times. The failure to disclose was also alleged to have prevented the shareholders from taking action on these matters and to have been motivated by a desire on the board's part to remain in control of management. Judge Werker dismissed the complaint on the ground that no fraud had been perpetrated on the corporation since all the directors and officers had knowledge of the facts and their knowledge was to be imputed to the corporation. The court recognized that a conflict of interest on the part of the board would justify refusing such imputation, but determined that an interest in remaining in control was insufficient to invoke the exception. The court noted that the directors "were charged with no other pecuniary interest which would have any bearing on a decision to disclose or not to disclose to the shareholders or the

S.E.C. . . . ." *Id.* at 91,911. Additionally, plaintiff had failed to allege an improper influence or control over the board. The court stated that "[i]n the absence of an adequate allegation of conflict of interest, or of deception by one group of officers or directors, or of a controlling influence over the directors and officers, the claim of fraud in this context is meaningless." *Id.; accord, Tyco Laboratories, Inc. v. Kimball,* 444 F.Supp. 292, 297–98 (E.D.Pa.1977) (directors' interest in retaining control without a pecuniary interest in the transaction was insufficient to avoid imputing to the corporation what was known to the board). Judge Werker also determined that plaintiff failed to allege causation in that the corporation was aware of the facts and therefore was not deceived. [1977–1978] Fed.Sec.L.Rep. (CCH) ¶ 96,086, at 91,912.[15]

Similarly, in *Goldberger v. Baker*, 442 F.Supp. 659 (S.D.N.Y.1977), Judge Goettel dismissed, with leave to replead, a derivative action charging a violation of section 10(b). The complaint alleged that the parent corporations had caused the subsidiary to enter into various securities transactions which were fraudulent as to the subsidiary. The court noted that "disclosure to a disinterested board is equivalent to disclosure to the corporation" when shareholder approval is not required. However, the court also acknowledged that the board can be considered to have defrauded the corporation if there is a conflict of interest in the transaction. *Id.* at 663. Judge Goettel disposed of plaintiffs' claims with respect to transactions with the parent corporation by noting

14. The *Goldberg* materiality concept based on the availability of injunctive relief was set in the context of a derivative suit brought on behalf of the subsidiary challenging a transaction that involved a controlling influence which adversely affected the interests of the subsidiary. That situation is not present here. Plaintiffs do not argue this theory of materiality, and it does not seem appropriate for this Court to extend the concept of materiality articulated in *Goldberg* to a situation in which there are no indications of predatory conduct on the part of the defendants.

15. Judge Werker also refused to allow an amendment to the complaint to allege that the

officer-directors had caused the making of improper payments to foreign government officials and others, and had concealed these facts on the books and records of the corporation. Although Judge Werker found that the plaintiff was barred procedurally because of a failure to make a demand on the board with respect to the proposed amendment, he also found that the amendment lacked an allegation of fraud properly cognizable under the securities laws because "[n]o deceit was committed upon [the corporation] since full knowledge was had by it." [1977–1978] Fed.Sec.L.Rep. (CCH) ¶ 96,-086, at 91,913.

that the complaint failed to allege nondisclosure of the terms of the transactions but merely alleged a failure to disclose their "unfairness." The court similarly disposed of the claim concerning a sale lease-back arrangement with a third party, noting the absence of an allegation of nondisclosure about the terms. However, the factor crucial to the court's decision was the failure to allege a conflict of interest on the part of the board in regard to the third party. The court noted:

> Funding Systems is not named as a defendant, nor is its relation to any of the defendants explained. Without such a conflict of interest allegation, a derivative action under Rule 10b–5 cannot be maintained, since knowledge of the board will be attributed to the corporation. . . [T]his allegation is nothing more than a claim that Health-Chem has been badly managed. It is not a claim that the corporation was defrauded by an improperly influenced controlling shareholder or group of directors.

*Id.* at 665 (citations omitted).

*Maldonado v. Flynn,* 448 F.Supp. 1032 (S.D.N.Y.1978), similarly considered a derivative claim under section 10(b) and found it lacking. Plaintiff claimed that the board of directors defrauded the corporation when it authorized a modification of a stock option plan immediately preceding a tender offer. Plaintiff alleged that the modification deprived the corporation of a significant tax benefit while according that benefit to the corporate officers exercising the options. Plaintiff admitted that the board of directors was fully aware of the ramifications of the modification but based his claim of "deception" or "manipulative conduct" on the fact that the shareholders had not been so informed. Defendants argued that there had been no deception because disclosure to shareholders was not required and the

transaction had been authorized by a fully informed board. The court recognized that the knowledge of the board could be imputed to the corporation to defeat a claim of deception, but noted that under certain circumstances disclosure to the shareholders is nonetheless required:

> Such is the case where, for example, dealings between a corporation and its parent or controlling person are questionable, or where the decision is one which under state law must be made by the shareholders directly, or where material facts were misrepresented or withheld from some members of the board of directors.

*Id.* at 1037 (footnotes omitted). However, the court found none of these factors present in the case before it. Although some of the directors were interested in the transaction, a sufficient number of the disinterested and fully informed directors had approved it.[16]

From the foregoing authorities it appears that a corporation can be held to have been deceived within the meaning of section 10(b) and rule 10b–5 when the board has a conflict of interest or is under the improper influence of a controlling person or when some members of the board have been deceived. In the instant case, plaintiffs maintain that the purchases and sales of securities were fraudulent as to GTE; that "[t]he facts though known to the individual defendants, were concealed from GTE itself." *Kaplan* Complaint ¶ 21. Plaintiffs further maintain that the "individual defendants *all* knew or with notice thereof recklessly disregarded the facts . . . alleged and failed to take appropriate corrective action with respect thereto." *Id.* ¶ 24 (emphasis added).[17] Plaintiffs do not allege that some members of the board misled others, nor do they allege a conflict of interest on the part of the board or a controlling influence exerted over it by

---

**16.** The court also found the plaintiff's claim lacking due to a failure to allege the materiality of the nondisclosure, there being a failure to allege how plaintiff could have used the information.

**17.** Plaintiffs further allege that defendants' "conduct was contrary to public policy and

fraudulent. Their causing, allowing, and permitting these transactions to occur and be concealed constituted a wilful, reckless, and grossly negligent abdication of their duties to supervise and manage the affairs of GTE in a faithful and responsible manner." *Kaplan* Complaint ¶ 24.

a dominant shareholder, parent corporation or board faction. *Compare Bankers Life, supra.* Although plaintiffs' claim would not necessarily be precluded by the fact that the Audit and Special Litigation Committees found no evidence of personal profit, plaintiffs have not even alleged pecuniary interest or other conflict on the part of the board.

 Oddly, while plaintiffs implicitly accept the findings of the Audit and Special Litigation Committees that no board member personally profited from these transactions, they appear to reject further findings which might have supported a theory of deceit. The Committees found that only some defendants had knowledge of and/or were involved in the conduct alleged, and that others did not know about the transactions and did not breach their duty to the corporation in failing to discover the facts. Plaintiffs ignore the conclusions pertaining to the degree of knowledge of the parties, and instead rely on a theory that all defendants knew or recklessly closed their eyes to the facts. *Cf. Tyco Laboratories, Inc. v. Kimball, supra,* 444 F.Supp. at 296 (allegation in the alternative that certain board members failed to disclose to and thus deceived other members was sufficient to withstand a motion to dismiss). Conceptually, plaintiffs' claim that all the individual defendants are liable for defrauding the corporation is inconsistent with a determination that the corporation was deceived; some of those charged with knowledge of the wrongs would have had to be deceived about those wrongs if the corporation were likewise to be deemed deceived. *Cf. Tyco Laboratories, supra* at 296–97 (motion to dismiss section 10(b) claim against certain directors granted since the allegations of their participation in the fraud would necessitate a finding that the board had not been deceived).

As it now stands, the *Kaplan* Complaint alleges a possible waste of corporate assets and breach of fiduciary duties to the corpo-

ration; however, it does not allege a fraud cognizable under section 10(b) and rule 10b–5, and that claim is therefore dismissed without prejudice.

### Conclusion

The disposition of the federal claims makes it unnecessary to consider defendants' argument that the business judgment rule precludes the instant suits or their motions to stay the instant proceedings. In light of the disposition of the federal claims, the state law claims are dismissed under the principles of pendent jurisdiction. *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 726, 83 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See also Kavit v. A. L. Stamm,* 491 F.2d 1176, 1179 (2d Cir. 1974).

For the foregoing reasons, defendants' motions for summary judgment are granted as to the claims under sections 12(b), 13(a) and 14(a) of the Act, and the motions to dismiss are granted without prejudice as to the claim under section 10(b) and the state law claims.[18]

Submit judgment on notice.

So ordered.

---

18. Although not all of the defendants named in the actions have joined in the instant motions, this Court dismisses the actions as to the nonmoving defendants on its own motion. *See Raitport v. Chemical Bank,* 74 F.R.D. 128, 134 (S.D.N.Y.1977); *Walner v. Friedman,* 410 F.Supp. 29, 34 (S.D.N.Y.1975); *Piedmonte v. Chicago Board Options Exchange, Inc.,* 405 F.Supp. 711, 718 (S.D.N.Y.1975).